[No. 2022]

## JAMES A. NESBITT, Respondent, v. CHERRY CREEK IRRIGATION COMPANY, Appellant.

[145 Pac. 929]

1. Principal and Agent—Undisclosed Principal—Action Against Agent and Undisclosed Principal—Election of Remedies.

    Where an undisclosed principal denied all liability for goods sold to his agent, without asserting that the seller should elect whether to hold the agent or the undisclosed principal, he waived his right to compel an election, and could not complain of a prior default judgment against the agent, rendered in the same action.

2. Corporations—Purchase of Goods for Its Benefit—Liability.

    Where goods furnished by a seller were furnished for the use of a corporation after its incorporation, the corporation was was equitably and legally liable, though the purchase for it was made by its undisclosed agent.

3. Principal and Agent—Undisclosed Principal—Liability— Election.

    Where a seller brought an action against the agent and the undisclosed principal, and obtained a default judgment against both, which was set aside as to the undisclosed principal, who denied all liability, the seller, prosecuting the action against the principal, elected to hold him responsible, and he could not complain of the judgment against the agent.

4. Principal and Agent — Undisclosed Principal — Liability — Election.

    A seller, who sued an agent and his undisclosed principal, without knowledge that the agent acted as agent, did not elect to hold the agent alone, and the principal could not escape liability.

5. Corporations—Purchase of Goods by Agent—Liability.

    Where an agent of a corporation purchased goods for it, the fact that the corporation, after being served with summons in an action for the price, gave the agent property to reimburse him for the merchandise sold by the seller, and for advances made by the agent before and after the corporation was incorporated, did not defeat liability of the corporation to the seller.

APPEAL from Fourth Judicial District Court, Lincoln County; *E. J. L. Taber*, Judge.

Action by James A. Nesbitt against the Cherry Creek Irrigation Company and another. From a judgment for plaintiff, defendant appeals. **Affirmed.**

*Clay Tallman*, for Appellant.

*Charles Lee Horsey*, for Respondent.

By the Court, TALBOT, C. J.:

This action was brought to recover $1,814.39 for goods, wares, and merchandise furnished by plaintiff, and for $100 alleged to have been advanced and loaned by plaintiff, and for $1,544.29 for goods sold and delivered by the Hodges-Cook Mercantile Company on a claim assigned to the plaintiff. Judgment by default was entered against both defendants. Thereafter the Cherry Creek Irrigation Company, the only appellant, moved to set aside the default and judgment entered against that company, asserting that it had a meritorious and complete defense to their action. This motion was accompanied by affidavits, including one by the defendant G. G. Davis, stating that he was familiar with the causes of action set forth in complaint; that all of the goods and merchandise were purchased by him from James A. Nesbitt and the Hodges-Cook Mercantile Company, and that they well knew that he was personally liable for the indebtedness, and that the Cherry Creek Irrigation Company was not responsible for the same; that the $100 loaned by James A. Nesbitt was loaned to Davis personally. The court granted the motion to set aside the judgment, and that company filed its separate answer, denying the allegations of the complaint and the liability of the company, and the case went to trial on its merits.

There was no dispute over the goods furnished or the amounts of the claims sued upon. The company contended that Davis alone was liable. The essential facts shown by the evidence and the findings of the court are undisputed. Davis investigated and undertook an extensive irrigation project for storing and conserving the waters of Cherry, Cottonwood, and Pine Creeks, mainly in Nye County, by means of a reservoir at the junction of these creeks. The water so conserved was to be used in Lincoln County. Davis secured in his own name from the state engineer a permit to appropriate the waters of the three creeks, and also secured in his own name a reservoir right of way from the United States. It was a part of his original plan to organize a corporation for his irrigation

project. Before commencing the actual construction of the dam, Davis arranged with a number of men to work for a share of stock a day, this stock to be issued as soon as the corporation was formed, and their supplies were to be furnished free of charge. At that time the stock was valued at $3 per share. About the time the construction work was commenced Davis began buying supplies from Nesbitt, to be used at the project, and for many months he purchased from Nesbitt from $500 to $800 a month. For a long time these were practically cash transactions, and the accounts did not run more than one or two months without being fully paid. Davis paid Nesbitt all that was owing up to May 1, 1909, and did not pay any more to Nesbitt after that date, but continued to purchase supplies from Nesbitt in May, June, and July of that year, and also in the summer of that year obtained supplies from the Hodges-Cook Mercantile Company.

At the "organization meeting of the incorporators and stockholders" of the Cherry Creek Irrigation Company on December 16, 1908, G. G. Davis was elected secretary and treasurer. At that meeting the directors adopted a resolution authorizing the issuance of 130,000 shares to Davis, and the issuance of not to exceed 12,000 shares of stock for distribution to the men for their work in pursuance of their understanding with Davis. The stock was issued accordingly in April, 1909. Thereupon Davis executed and delivered a deed to the company, dated April 2, 1909, conveying to the company the reservoir, right of way, water rights, and improvements, with the appurtenances, privileges, and franchises incident thereto, and all the interests of Davis in the property, including the reservoir site, dam, headgates, culverts, ditches, and spillways. The deed was recorded in the office of the county recorder in Lincoln County on the 3d day of April, 1909. Davis was president and manager of the affairs of the company at all times after the directors' meeting, and thereafter had full charge of all that was done at the project.

The court found that in selling goods to Davis, the plaintiff and his assignor, while they necessarily gave

credit to Davis, not knowing any other person in the transaction, still held to the project, and extended credit to Davis chiefly because of his extensive operations in connection with this irrigation work. In May, June, and July, 1909, Davis and some thirty or forty men were engaged in completing a twelve-mile canal in connection with the project. The court further found that Davis, in purchasing goods and supplies from plaintiff and his assignor, did not buy any of the goods for himself or for his own benefit, but purchased all of them as the agent of the defendant company, and that it was, in fact, the company that bought all of the goods and supplies, through its manager and general agent, G. G. Davis, from the plaintiff and his assignor; that all of the goods were used by the company at the irrigation project, and that the company received the exclusive benefit of all goods and merchandise furnished; that Davis, in paying out his own money, did so, at least at all times subsequent to the organization of the company, not for himself, but for the company, and that the understanding on the part of the directors of the affairs of the corporation was that the money was to be spent in behalf of the corporation for its exclusive benefit, and that Davis was to receive stock, not only for all property which he was to deed over to the company, but for all moneys expended by him in connection with the project.

The judgment was rendered in favor of the plaintiff for the amount claimed and for the supplies furnished as alleged in the second and third causes of action of the complaint. The $100 alleged to have been loaned in the second cause of action was found to be for Davis personally, and is not included in the judgment.

[1] The main objection urged upon the appeal is that, as Davis was the agent and the company the undisclosed principal, the plaintiff should have elected to hold either Davis or the company, and is not entitled to a judgment against both. It does not appear that, at the time the judgment was taken by default against Davis and the company, the plaintiff was aware of this condition. If, in

moving to set aside the default, by answer, and at the trial, the company, instead of denying and trying to avoid all liability, had claimed, as now asserted, that the plaintiff must elect which it will hold, the company would be in a better position to have its contention determined. Having contested on the ground that it is in no way liable, without asserting at the trial that the plaintiff should elect, we think the company has waived its right, if any, to now assert that the plaintiff cannot recover because it did not elect to hold either the company or Davis when it was making a contention against any liability.

[2-3] As all of the goods for which payment was not made, and for which recovery is now sought, were furnished for the use and benefit of the company after its incorporation, and after it had acquired the property by deed, the company is equitably and legally liable for the merchandise so furnished. The sole defense being on the merits at the trial, the main doctrine of election should not apply. It is apparent that the plaintiff, by suing the company, by going to trial, and upon this appeal, elects to hold the company responsible for the goods furnished. If under these circumstances Davis were before the court, claiming that he should be released from the judgment because the plaintiff has elected to hold the company for the value of the supplies furnished to the company and for the company on his order, it would become necessary to determine the questions presented by the briefs, relating to whether the plaintiff is entitled to judgment against both or only one of the defendants.

[4] It should not be held that the plaintiff's act in bringing suit against both Davis and the company, before the plaintiff was aware that Davis was acting as the undisclosed agent of the company, amounted to an election by plaintiff to hold Davis, and that therefore the company cannot be held responsible. With as much reason it could be said that, by suing both, the plaintiff elected to hold the company, and that therefore Davis was released, and that consequently neither the company

nor Davis would be liable.   If the plaintiff had first sued
Davis, and had later brought an action against the com-
pany for the same debt, the company would be in a better
position to claim that the plaintiff elected to hold Davis,
and that therefore the company was released.   In his
opinion the learned district judge said:

"In the present case both the principal and the agent
were joined as defendants.   No motion was made by
either of the defendants at any time that the plaintiff be
required to elect which of the defendants he would look
to.   Even after the evidence was in, no such motion was
made.   Certainly the plaintiff did not elect to hold either
the principal or agent by commencing suit against both,
and the judgment which now stands upon the record
against the agent was entered simultaneously with the
judgment that was entered against the defendant com-
pany; both judgments being entered by the clerk of the
court by default.   The defendant company succeeded in
having the default against it set aside, thus leaving the
default judgment against the agent in full force and
effect.   In view of all the circumstances of this case, the
court does not believe that it would be within the spirit
of the rule to hold that the plaintiff had elected to hold
only the agent."

[5] If the company had raised an issue in the answer,
or had asserted at the trial that, if the company were
liable at all, it was only as an undisclosed principal, and
that therefore the plaintiff must elect which he will hold,
or if the goods for the price of which recovery is sought
had been sold and delivered to Davis before, instead of
to the company after, it had been incorporated, and the
property had been deeded by Davis to the company, more
serious questions would be presented.   The court found
under the testimony of Davis that he regarded himself
as the company.   The fact that he had the company give
him stock after the property had been deeded to the com-
pany, and after the company had been served with sum-
mons in this action and had notice of the plaintiff's
claims, to reimburse Davis for the merchandise sold by

the plaintiff and his assignor, and for advances made by Davis before and after the company was incorporated and the property deeded to the company, is no reason why the company should not pay the plaintiff for the merchandise furnished.

The judgment of the district court is affirmed.

NORCROSS, J.: I concur.

[NOTE—MCCARRAN, J., having become a member of the court after the argument and submission of the case, did not participate in the opinion.]