BRYANS ROAD BUILDING & SUPPLY CO., INC. *v.*
ELVIN GRINDER, IND. AND T/A GRINDER
CONSTRUCTION ET AL.

[No. 1222, September Term, 1979.]

*Decided June 13, 1980.*

The cause was argued before MOYLAN, MELVIN and WILNER, JJ.

*John Lund Keller,* with whom was *Gary Gasparovic* on brief, for appellant.

*Christopher C. Henderson,* with whom was *Edward S. Digges* on the brief, for appellees.

WILNER, J., delivered the opinion of the Court.

The "nice sharp quillets of the law" [1] are both weapon and shield, thrust and parry. Or, as appellant would say in this case, "my technicality prevails over your technicality." In the end, it is the Court's technicality, unrecognized as yet by either party, that will prevail.

This proceeding commenced on May 1, 1978, when appellant, a building supply company, sued Elvin Grinder, individually and trading as Grinder Construction, in the Circuit Court for Charles County, for some $5,900. The suit was for goods sold and delivered on a long-standing open account. Attached to the Declaration was a motion for summary judgment, accompanied by an affidavit and copies of monthly statements sent to Elvin Grinder showing the periodic status of the account and the final balance due.

On June 20, 1978, Mr. Grinder, individually, filed a general issue plea to the Declaration and an answer to the motion for summary judgment. In this answer, Grinder asserted that, since May 1, 1973 (a date earlier than any of the purchases sued upon), he had made all purchases from appellant on behalf of a corporation known as G. Elvin

---

1. *See* Shakespeare's Henry VI, Part I, Act II, Scene IV, response of the Earl of Warwick.

Grinder Construction, Inc., of which he was president, that he never guaranteed the corporate obligation personally, and that he was not, therefore, liable for its indebtedness in his individual capacity. With this assertion, he sought to defeat summary judgment on the basis of having raised a genuine dispute of material fact. The court agreed, and, on June 29, 1978, denied appellant's motion.

Appellant responded on August 15, 1978, with an Amended Declaration in which it (1) expanded its action against Grinder individually with a claim that the corporation was his "alter ego," that Grinder undercapitalized the corporation during its corporate life, and that he caused it to incur debts when there was no reasonable possibility that it had sufficient assets to cover those debts, and (2) brought the corporation in as an additional defendant. General issue pleas were filed to the Amended Declaration on behalf of both Grinder individually and the corporation.

Appellant then propounded rather extensive interrogatories to both defendants, seeking detailed information about their relationship and the fiscal affairs of the corporation. After a three-month wait, the defendants served answers that gave virtually no information. Most of the questions were not answered at all. Appellant, on February 23, 1979, moved for summary judgment against the defendant corporation, relying primarily upon Grinder's admissions contained in his answer (and affidavit) filed in response to appellant's earlier motion against him. As the corporation was penniless and defunct, no one opposed this new motion; and, on May 25, 1979, it was routinely granted. On that day, judgment in the amount of $5,912.68 was entered against G. Elvin Grinder Construction, Inc. Trial of the case against Grinder individually had previously been set for June 4, 1978, and no attempt was made to disturb that proceeding. No further pre-trial pleadings were filed.

At trial, appellant's position was that the account in question was opened in 1961, that it was in the name of Elvin Grinder, individually, trading as Grinder Construction, and that it was never changed to or

superseded by a corporate account. Appellant maintained that all purchases were made on this one account, that there never was a corporate account, and that appellant was never informed of the corporate existence. This was significant, appellant argued, because of its policy of not extending credit on corporate accounts without individual guarantees.

Grinder's response, and its defense to the claim, was that, by taking judgment against the corporation, appellant had, at least implicitly, recognized the existence of the corporation and the status of the account in question as a corporate one. Otherwise, he argued, appellant had no right to a judgment against the corporation. Thus, by seeking and taking that judgment, appellant was estopped from claiming that the account was an individual one and pursuing judgment against Grinder individually. As counsel for Grinder said in summation, "the proceedings narrow down to a rather narrow issue, was there a corporate account or not." It was in the context of that "narrow issue" that he argued the relevance of the corporate judgment.

The court was more precise. It saw the case as involving two quite different issues: (1) was the individual account ever replaced with a corporate one, and (2) in any event, if Grinder, individually, was acting as agent for the corporation and the corporation at the time was an undisclosed principal, did the taking of judgment against the principal constitute an election sufficient to preclude judgment also against the agent? The court initially answered both questions in the negative and thus awarded judgment against Grinder individually, notwithstanding the prior judgment against the corporation. It found that appellant was unaware of the corporate existence and relied upon Grinder's individual credit and integrity. In effect, it concluded that even if Grinder was acting in the capacity of an agent, his principal — the corporation — was undisclosed insofar as appellant was concerned.

Three days later, Grinder moved to strike the judgment, picking up the issue elucidated by the court and contending

that the court had erred in rejecting his theory of estoppel. After a hearing, the court concluded that the matter was controlled by the doctrine of "election" enunciated most recently in *Traylor v. Grafton,* 273 Md. 649 (1975), and, ignoring appellant's argument that that defense was not properly before the court, struck the judgment and entered judgment in favor of Grinder.[2] In doing this, the court correctly stated the substantive law, but wrongfully applied it.

## (1) *Appellee's Technicality*

In *Codd Company v. Parker,* 97 Md. 319, 325 (1903), the Court made clear that

"where an agent contracts in his own name, without disclosing his interest, though in fact for the exclusive benefit of another person, who is afterwards discovered, the creditor may sue either, but after he has elected whom to sue and has sued, either the agent or principal to *final judgment,* he cannot after that sue the other, whether the first suit has been successful or not." (Emphasis in the original.)

This doctrine of "election"[3] was explained in somewhat greater detail in *Hospelhorn v. Poe,* 174 Md. 242 (1938), and again in *Traylor v. Grafton, supra,* 273 Md. 649. *See also Wheaton Lumber Co. v. Metz,* 229 Md. 78 (1962). The "bottom line" of it, as stated in both *Hospelhorn* (p. 261) and *Traylor* (p. 675) is this:

"If the third party contract[s] with an agent for an

---

2. The effect of this, the parties conceded at oral argument, was to dispose of all issues in the case, including the second claim against Grinder individually, made in the Amended Declaration. We do not perceive, therefore, any problem, *in this regard,* under Maryland Rule 605a. *See, however,* our discussion *infra* re Rule 605 a.

3. Some commentators suggest that the doctrine in question is not really one of election. *See Seavey on Agency,* Hornbook Series, § 79, and *compare* Restatement of Agency 2d § 210 and Comment thereto. Whether the doctrine rests upon a theory of election between alternatives or on some other basis is not important in this case; the effect would be the same in either event.

undisclosed principal, he may hold the agent or, upon discovery, the principal, but the third party cannot *recover* from both. If the third party elects to hold the agent, the principal is discharged; and, conversely, if he elects to hold the principal, the liability of the agent is at an end." (Emphasis supplied.)

The third party is entitled to join both principal and agent as co-defendants in a single action, and he may thus proceed against both. The election does not occur "until he takes a *final judgment* against the one he thus elects to hold to the exclusion of the other." (Emphasis supplied.) *Hospelhorn* at 259; *Traylor* at 674. It is thus the *final judgment* that constitutes the election and bars recovery against the alternative defendant.

This doctrine — appellee's "technicality" — can come into play in a number of factual settings. In *Codd Company v. Parker, supra,* the plaintiff had recovered judgment against the principal before suit was ever filed against the agent. The defense of discharge based on election thus existed at the time the second suit was filed. By way of contrast, in *Wheaton Lumber Co., supra,* principal and agent were joined as co-defendants in the same action, but judgment against one was entered upon pre-trial motion.[4] In that

---

4. The actual holding in *Wheaton* was that the election doctrine of *Codd* and *Hospelhorn* was not applicable. The plaintiff (Wheaton) had initially sued two defendants on an open account. In count one, it alleged that Rothman had been the purchaser; in count two, it alleged that Metz and Mood, trading as Best Window Co., had purchased the goods through Rothman, their agent. Wheaton recovered a default judgment against Rothman. Subsequently, as the result of discovery, Wheaton learned that the real purchaser may have been a corporation known as Best Construction Company, to which Best Window Co. had transferred its business; and it then filed an amended declaration adding the corporation. On the day of trial, the court granted defendants' motions for summary judgment on the premise that, by taking judgment against Rothman, the agent, plaintiff had made an election and was not entitled to proceed against the alleged principals.

The Court of Appeals reversed on the grounds that (1) with respect to Best Window Co., the account was in its name, and it was therefore not an undisclosed principal to which the election doctrine applied; and (2) as to Best Construction Company, Wheaton was not aware of its existence at the time it took judgment against Rothman, and the election doctrine applies

situation, as in the one *sub judice,* the defense of election (and thus of discharge) arose *during* the proceeding and did not exist *ab initio.* This distinction is critical when considering,

### (2) *Appellant's Technicality*

It will be recalled that Grinder's only plea to the Declaration and Amended Declaration was the general issue — "not indebted as alleged." Maryland Rule 342 b. 3 provides that "[u]nder a general issue plea any matter of defense shall be admissible in evidence, *except such matters as must be specially pleaded pursuant to section c of this Rule."* (Emphasis supplied.) Section c. 1 of Rule 342 states, in relevant part:

> "The following matters of defense *must* be specially pleaded in an action *ex contractu*:
>
> * * *
>
> (e) Pleas *Puis Darrein Continuance*
> Any defense on the merits arising after suit brought." (Emphasis on "must" supplied.)

This part of Rule 342 c serves merely to codify and perpetuate the common law plea *puis darrein continuance* (since the last continuance), which has been accepted as part of our system of common law pleading at least since *Agnew v. Bank of Gettysburg,* 2 H. & G. 479 (1828), where, at page 492, the Court of Appeals stated:

> "The cases are very conclusive to shew, that *where matter of defence arises after the institution of the suit, it must in general be specially plead, and*

only when the plaintiff knows of the previously undisclosed principal when he takes a final judgment.

*See,* however, *Garfinkel v. Schwartzman,* 253 Md. 710 (1969), where principal and agent were also joined in a single action. At the conclusion of the case, final judgment was entered against the principal, but, on directed verdict, in favor of the agent. On appeal by the plaintiff, the Court held that the plaintiff could not recover from both, and that, by taking the judgment against the principal, the agent's liability was extinguished. *See* 253 Md. at 727, 728.

*cannot be given in evidence under the general issue,* as in the case of of [sic] a release given after the commencement of the suit, or a reference and award made *pendente lite,* or hostile alienage happening after the commencement of the action, or coverture of the plaintiff after action brought, *or any matter of abatement occurring after suit brought,* or after plea pleaded to the merits. All other matters which go to the foundation and gist of the plaintiff's action, at the time of its commencement, with some very special exceptions, which it would be unnecessary to enumerate, may be given in evidence under the general issue. Defences arising after the commencement of the action should be plead *puis darrein continuance,* or against the further maintenance of the suit." (Emphasis supplied.)

This "doctrine," the court said at p. 492, is "founded in justice, and calculated to prevent surprise." [5] It served not only to prevent the defendant from offering evidence of the new circumstance raised in defense (expiration of the plaintiff bank's charter after suit was filed), but also from availing himself of the fact to nonsuit the plaintiff. At p. 492: "Whether the bank was dissolved or not pending the suit, *was not in issue,* and the fact of the dissolution of the charter having taken place after the commencement of the action, *was not pertinent to the issue,* and was not in evidence before the jury." (Emphasis supplied.)

The Court of Appeals has never departed from this ancient doctrine in its decisional law. *See Semmes v. Naylor,* 12 G.

---

**5.** This statement had special relevance, perhaps, at a time predating the liberal discovery rules that now apply, in particular the device of the "continuing" interrogatory. *See* Maryland Rule 417; *Pare v. Rodrique,* 256 Md. 204 (1969). In that regard, it is important to note that among the interrogatories (continuing in effect) propounded by appellant to Grinder was No. 20: "State all defenses which you have to this suit on the open account and/or all reasons why you state you are not indebted as alleged." Grinder's answer, filed February 22, 1979, and never supplemented or amended, was merely, "All personal accounts with [appellant] are paid in full." No mention was ever made of the discharge defense triggered by the summary judgment against the corporation.

& J. 358, 361 (1842); *Bank of U.S. v. Merchants Bank,* 7 Gill 415, 428-29, (1848); *Wheaton Lumber Co. v. Metz, supra,* 229 Md. 78, 86. Indeed, in adopting (or publishing) Maryland Rule 342 c. 1 (e), the Court made a footnote reference to *Poe's Pleading and Practice* (6th ed.), § 621, which states rather succinctly, *"Plea setting up defenses on the merits arising after suit brought.* — These defenses must always be specially pleaded, or evidence of them will be rejected."

It is evident, therefore, that, *if the election doctrine was applicable in the first instance,* as the court below believed, so was Maryland Rule 342, which would, in that event, have served to preclude appellee from relying on the doctrine.[6] But, as we earlier noted, there is yet to be considered,

## (3) *The Court's Technicality*

In quoting from *Codd, Hospelhorn,* and *Traylor* (*see ante,* pp. 4, 5), we have carefully underscored the language which makes clear that the election between agent and undisclosed principal does not occur until the plaintiff takes *final judgment* against one or the other. There has never, in the Maryland cases, been any question about that. Until a final judgment, the plaintiff may proceed merrily against both agent and principal.

In such a case, of course, multiple claims — independent claims against two or more parties — are involved. *Tedrow v. Ford Motor Co.,* 260 Md. 142 (1970); Moritz v. Church of *Jesus Christ,* 266 Md. 220 (1972). This brings into play Maryland Rule 605 a (Multiple Claims — Judgment Upon), which provides:

"Where more than one claim for relief is presented

---

6. Grinder defends his failure to plead the defense specially on the ground that appellant suffered no prejudice from it — that appellant was obviously aware that it had taken judgment against the corporation and was not surprised by Grinder's exposition of that fact.

There is a subtle, but nonetheless significant, difference, however, between awareness of a fact and knowledge that a defense based upon that fact will be interposed. This distinction was at least implicitly recognized in *Agnew:* the bank was obviously aware that its charter had expired during the pendency of the litigation, but it was not forewarned that the defendant intended to use that fact to defeat its claim. We perceive no greater, or lesser, prejudice there than here.

in an action, whether as an original claim, counterclaim, cross-claim, or third-party claim, the court may direct the entry of a *final* judgment upon one or more but less than all of the claims only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. *In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates less than all the claims shall not terminate the action as to any of the claims, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims."* (Emphasis supplied.)

The record before us reveals that no "express determination" of the type referred to in Rule 605 a was made with respect to the summary judgment taken against the corporation; nor does it appear that there was "an express direction for the entry of [such] judgment." It was therefore not a *final* judgment when entered, but was subject to revision until the case against Grinder individually was resolved by final judgment. *See Tedrow v. Ford Motor Co., supra,* 260 Md. 142; *Leach v. Citizens Bank of Md.,* 17 Md. App. 391 (1973); *also Associated Realty Co. v. Kimmelman,* 19 Md. App. 368, 374 (1973): "Under Md. Rule 605 a ... all judgments are subject to revision in a multi-claim or multi-party suit until the claims of all the parties against each other have been disposed of, absent both an express determination that there is no just reason for delay and an express direction for the entry of judgment." (Footnote omitted.)

In the circumstances of this case, therefore, appellant's election as between the agent and the principal remained open and viable at the conclusion of its case against the agent, and was not foreclosed by the mere entry of a revisable, non-final summary judgment against the principal. The election doctrine, which formed the basis of the court's ultimate ruling, was simply not applicable.

It is inferable from what the Court said in *Hospelhorn,* 174

Md. at 259, 261, that, where both principal and agent have been joined in a single action, the proper time for election is at the end of the case — before *any* final judgments are entered.[7] The existence of a judgment previously entered on motion presents somewhat of a "wrinkle" in this approach, of course, but not a significant or fatal one, so long as that judgment is not final. It would have been possible, and, we think, proper, for appellant to have made its election — to rest on the corporate judgment and forego the individual one or, conversely, to request the court to strike the corporate judgment and proceed against Grinder individually — at the conclusion of trial. That procedure would have preserved the letter and the substance of the *Cobb-Hospelhorn* doctrine without doing the slightest violence to the summary judgment procedure or to Maryland Rules 342 or 605.

Because this was not done, the record before us is, from a technical and formal point of view, unclear. Although we have serious doubt that appellant intended to opt (or, if given the opportunity, would actually opt) to hold a defunct and worthless corporation in lieu of the individual whose credit supported the account, it has taken no affirmative steps to forego the judgment against the corporation. With neither party, nor the court, fully appreciating the problem until both judgments had been entered, it would be a triumph of legal fiction over justice for us to assume, as ultimately did the trial court, that appellant made a knowing election in favor of the penurious defendant.

In light of this record, this seems an appropriate case in which to invoke Maryland Rule 1071 a and to remand the matter, without affirmance or reversal, in order to permit appellant to make its election. If, at a proceeding held for that purpose, it opts to hold Grinder individually, the court should reinstate the original judgment entered against that individual and strike the judgment against the corporation.

---

7. The Court did not expressly state this, but it would seem to be a reasonable inference. *See* Reporter's Notes to Restatement of Agency 2d, § 210, Appendix (1958), p. 285, where *Hospelhorn* is cited for the proposition that "principal and agent can be joined, with the election to be made at the end of the trial." *See also* 2 *Mechem on Agency*, §§ 1758, 1759.

If, perchance, appellant should elect to hold the corporation, the existing judgments should stand.

> *Case remanded to Circuit Court for Charles County without affirmance or reversal pursuant to Maryland Rule 1071 a for further proceedings in accordance with this opinion; costs to be divided equally between the parties.*