ELVIN GRINDER, Indiv. and trading as Grinder
Construction ET AL. v. BRYANS ROAD
BUILDING & SUPPLY CO., INC.

[No. 76, September Term, 1980.]

*Decided July 15, 1981.*

The cause was argued before MURPHY, C. J., and SMITH, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Christopher C. Henderson,* with whom was *Edward S. Digges* on the brief, for appellants.

*Gary Gasparovic* for appellee.

RODOWSKY, J., delivered the opinion of the Court.

The liability of an undisclosed principal has been called an "anomaly" from the standpoint of the law of contracts.[1] Here we focus on a particular aspect of the anomaly. Where the creditor obtains a final judgment against one of the parties to the agency relationship, after learning of the existence and identity of the principal, the creditor is precluded from obtaining judgment against the other party. This is so even if the first judgment is unsatisfied. Reexamination of this rule of law convinces us that it is unsound and should no longer be followed. We adopt the rule that, absent other defenses, the third party may ordinarily proceed against the agent, or the previously undisclosed principal, or both, until the performance is satisfied.

This appeal arises out of a common business situation. G. Elvin Grinder (Grinder) of Marbury, Maryland is a building contractor. He did business as an individual and traded as "Grinder Construction." Grinder maintained an open account, on his individual credit, with Bryans Road Building & Supply Co., Inc. (the Plaintiff). On May 1, 1973 G. Elvin Grinder Construction, Inc., a Maryland corporation (the

---

1. Sir Frederick Pollack, Note, 3 Law Q. Rev. 358, 359 (1887).

Company), was formed. Grinder owned 52% of the stock. On May 1, 1978 the Plaintiff sued Grinder, individually and trading as Grinder Construction, on the open account, on which the balance represented exclusively purchases made after May 1, 1973. A motion for summary judgment, with supporting affidavits and exhibits, accompanied the declaration. In his affidavit in opposition to the requested summary judgment Grinder swore that the purchases were made by the Company, acting either through him as president, or through others as agents for the Company, and that all purchases were used entirely on construction projects of the Company. As a result the Plaintiff on August 15, 1978 filed an amended declaration which joined the Company as an additional defendant. On February 23, 1979 the Plaintiff moved for summary judgment against the Company, predicating its motion on the sworn admissions of Grinder, the president of the Company, in his affidavit. This motion was not opposed and summary judgment was entered against the Company in the amount of $5,912.68 on May 28, 1979.[2] At trial on the merits of the claim against Grinder, the Plaintiff's position was that it had never been advised that the Company was making purchases, that the purchases were made on the account of Grinder, the individual, and that he was liable for the balance. Grinder testified that the Plaintiff had been advised to convert the account to a corporate account. His counsel argued that the Plaintiff was estopped to deny that the account was a corporate one because the Plaintiff had taken summary judgment against the corporation. The trial court found as a fact that Grinder

---

2. At trial on June 4, 1979 Grinder testified that the Company's charter was "annulled" in 1978. The record indicates this was a forfeiture of the corporate charter for non-payment of taxes or for failure to file an annual report pursuant to Md. Code (1975), § 3-503 of the Corporations and Associations Article. "Forfeiture lists," certified to the Governor either by the Comptroller or by the Department of Assessments and Taxation, are not sent until after September 30 of each year. § 3-503 (a) and (b). Thus, forfeiture of the Company's charter would not have been effected until after the amended declaration of August 15, 1978, which joined the Company. Md. Rule 222 provides in part that an "action by or against a corporation shall not abate by reason of . . . forfeiture of charter . . . ." The Plaintiff neither argued here, nor in the Court of Special Appeals, that the summary judgment against the Company was not a judgment because the Company's charter was forfeited or "annulled."

had not notified the Plaintiff either that the billing on the open account should be transferred to a corporation or that Grinder's individual liability should be terminated. In its oral opinion from the bench, the trial court further found that the Company had received the assets for which the individual agent was billed, that the Plaintiff was unaware of the principal-agent relationship and that it was relying on the credit of the agent. In an application of pure legal reasoning, untainted by citation to the precedents, the trial court held that merely taking summary judgment against the principal did not estop the Plaintiff from obtaining judgment against the agent, Grinder. Judgment *nisi* was entered against Grinder on June 4, 1979.

Three days thereafter, Grinder filed a "motion to strike and enter judgment" which the court in effect treated as a motion for new trial under Md. Rule 567 by deferring entry of final judgment. Grinder's supporting statement of authorities referred to *E. J. Codd Company v. Parker,* 97 Md. 319, 55 A. 623 (1903) and thereby, for the first time, injected the concept of election into the case. In *Codd* the creditor, upon finding that it had been dealing with an agent, made claim against the principal in a proceeding in equity where an auditor's account was finally stated and ratified but under which no dividends were paid to the creditor. In a subsequent action by the creditor against the agent, in which the agent by special plea had set up the defense of election based upon the prior judgment against the principal, judgment went for the agent and was affirmed on appeal. This Court said (97 Md. at 325, 55 A. at 624):

> And the general principle appears to be established that where an agent contracts in his own name, without disclosing his interest, though in fact for the exclusive benefit of another person, who is afterwards discovered, the creditor may sue either, but after he has elected whom to sue and has sued either the agent or the principal to *final judgment,* he cannot after that sue the other, whether the first suit has been successful or not. [Emphasis in text.]

At a hearing on July 2, 1979, the trial court struck the judgment against Grinder and entered judgment in his favor against the Plaintiff for costs. The Plaintiff timely filed an order to "[e]nter an appeal to the Court of Special Appeals from the judgment entered in this action on July 2, 1979."

The intermediate appellate court, in an opinion by Judge Wilner which closely reasoned within the letter of our decisions involving the election rule, remanded without affirmance or reversal under Md. Rule 1071. *Bryans Road Building & Supply Co. v. Grinder,* 46 Md. App. 10, 415 A.2d 615 (1980). Relying on the language of *Codd, supra,* and of *Hospelhorn v. Poe,* 174 Md. 242, 259, 198 A. 582, 590 (1938), that court held that election does not occur until the creditor takes a final judgment against the one he chooses to hold to the exclusion of the other. It reasoned that the judgment of May 28, 1979 against the Company was not a final judgment because there were multiple claims in the case and the summary judgment had not been certified as final pursuant to Md. Rule 605 a. Thus, the Plaintiff's election was still open at the point of judgment *nisi* against Grinder. Recognizing that neither party, nor the court, had fully appreciated the problem until both judgments had been entered, the Court of Special Appeals concluded that "it would be a triumph of legal fiction over justice for [it] to assume, as ultimately did the trial court, that [Plaintiff] made a knowing election in favor of" the judgment against the Company. 46 Md. App. at 20, 415 A.2d at 621. It therefore remanded to permit the Plaintiff to make an election.[3]

---

**3.** Were we to adhere to the election rule, we would nevertheless find in this case that no final election had been made. Grinder argues that the legal effect of judgment against the Company was to exclude his liability, whether that result was intended by the Plaintiff or not. However, there is considerable authority for the proposition that, in actions tried jointly against a previously undisclosed principal and the agent, a defendant must assert that the claimant creditor is required to elect and that, absent such an assertion by a defendant, judments against both principal and agent can stand. These cases are inconsistent with Grinder's position that election in this case occurred automatically with the entry of summary judgment against the corporation. Illustrative of the point is Davis v. Childers, 381

This disposition by the Court of Special Appeals leaves the Plaintiff with a judgment either against Grinder or against the corporation, but not against both. But, in its cross-petition for certiorari, which we granted, the Plaintiff argues that it should be entitled to a judgment against both. That was, of course, the original decision by the trial court. The Plaintiff preserved this argument in its brief to the Court of Special Appeals. Grinder has raised a procedural question which is directed at the remand by the Court of Special Appeals. He contends the Plaintiff's order for appeal limited review to the judgment for costs against it rendered on July 2, and that the Plaintiff could not appeal from the summary judgment against the Company because it was in the Plaintiff's favor. Without intimating whether

So. 2d 200 (Ala. Civ. App. 1979), *cert. denied*, 381 So. 2d 202 (Ala. 1980) where the court said (at 202):

> After agency is established . . . plaintiff may be required prior to judgment to elect whether to hold liable the agent or the principal. Though the right of election belongs to the plaintiff, it operates in favor of the defendants. It therefore should be their responsibility to demand it by motion or some appropriate pleading. We hold that if such demand to elect is not made and plaintiff does not of his own accord elect before entry of judgment, it may be considered waived, though we do not say it would come too late if presented by timely motion for new trial.

*Accord,* Luce v. Sutton, 115 Cal. App. 2d 428, 252 P.2d 352 (1953) (failure to demand an election in the lower court constitutes a waiver); Burnell v. Morrison, 46 Colo. 533, 105 P. 876 (1909) (claim of misjoinder of parties first raised by motion in arrest of judgment came too late and was waived); Stevens v. Wisconsin Farm Land Co., 124 Minn. 421, 145 N.W. 173 (1914) (the right to compel an election is the defendants' only remedy, but the option is with the plaintiff — where no request was made that the plaintiffs be required to elect, the court cannot dismiss the cause as to either principal or agent, and the joint judgment stands); Central Lumber & Manufacturing Co. v. Reyburn-Laird Real Estate Building & Construction Co., 189 Mo. App. 405, 176 S.W. 509 (1915) (misjoinder of parties which appears on the face of the petition is waived by failure to demur); Nesbitt v. Cherry Creek Irrigation Co., 38 Nev. 150, 145 P. 929 (1914) (where default judgments were entered against principal and agent, and the principal opened the judgment against it to contest liability, without asserting at trial that the plaintiff should elect, the principal waived its right to require an election); Hoyt v. Horst, 105 N.H. 380, 388, 201 A.2d 118, 123 (1964) ("Neither [defendant] objected to the plaintiff's failure to make an election as to which one she would choose to hold .... The case has not yet gone to judgment, and we believe, at least in the absence of timely objection, that if the plaintiff prevails she may have judgment against both defendants."). And see Restatement (Second) of Agency § 210 A (1957).

these arguments have merit or not in relation to the remand to permit an election, it is clear that the judgment of July 2 was against the Plaintiff and that the order for appeal, even if limited to it, would bring up the question whether the Plaintiff ought to be permitted to take judgment against the agent, in addition to its unsatisfied judgment against the principal. Reexamination of the election rule, at least to some degree, is therefore squarely presented.

Following adoption of the election rule in *Codd* in 1903, this Court next considered the subject in the 1938 *Hospelhorn* decision. That litigation involved statutory assessments by the receiver of the insolvent Baltimore Trust Company against its shareholders. One of the cases (*Hospelhorn v. Boyce,* 174 Md. 275, 198 A. 597 (1938)) involved shares carried on the books of the bank in the name of an employee of a brokerage house which was not disclosed as principal. At issue on demurrer was the alleged misjoinder of principal and agent since, under the election rule, their liability is viewed as alternative and not joint. This Court held the joinder to be proper, but said the plaintiff would have to elect against which of the joined defendants he would take his final judgment. The reasons given in support of joinder are a blend of the intricacies of common law pleading and of practicality. We said that "[t]here is but one contract to be performed in respect of the one subject matter involved, and the principal and agent constitute but one party of the contract." *Hospelhorn v. Poe, supra,* 174 Md. at 257, 198 A. at 590. Further, because the creditor could simultaneously sue both principal and agent separately until final judgment against one, there was no sound reason why they could not be sued jointly. It was said that the case was not one of consensual contract, but of quasi contract based on a statutory obligation which bound the defendants alternatively, so that the common law prerequisite of a joint promise did not apply; that joinder was justified as a means of satisfying the agent's liability for the statutory assessment by enforcing against the principal the agent's right of indemnification; and that joinder would permit the election to be made after a determination that a relationship of

previously undisclosed principal and agent in fact existed so that the case was one involving alternative remedies in reference to which an election was necessary. *Id.* at 259-61, 198 A. at 590-92. Of course, joinder of alternative claims, which was so troublesome at the time of *Hospelhorn,* is today resolved by Md. Rule 313 c 1. But our modern pleading rule does not reach the underlying problem, that of an election occurring by final judgment.

There is an exception to the election rule applicable where the creditor takes judgment against the agent before knowledge of the identity of the principal, in which case the principal is not discharged and judgments against both may stand, with but one satisfaction allowed. This exception was applied as an alternative ground of decision in *Wheaton Lumber Co. v. Metz,* 229 Md. 78, 82, 181 A.2d 666, 669 (1962).

Our most recent holding which applies the election rule as Maryland law is *Garfinkel v. Schwartzman,* 253 Md. 710, 254 A.2d 667 (1969), a suit for real estate broker's commissions in which the undisclosed principal seller and his agent to sell were joined. Judgment in favor of the broker against the principal was affirmed. On the broker's cross-appeal from a directed verdict in favor of the agent we said, on the authority of *Hospelhorn,* that the broker had his judgment against the principal and could not recover his commissions from both. *Traylor v. Grafton,* 273 Md. 649, 332 A.2d 651 (1975) presented the contrast between the election rule, in force in Maryland, and the Pennsylvania rule, discussed *infra,* under which judgments against both principal and agent are permitted, with one satisfaction. That case involved a contract made in Pennsylvania to purchase Pennsylvania realty. Pennsylvania law applied and notice of intention to rely upon the law of Pennsylvania was given. See Md. Code (1974, 1980 Repl. Vol.), § 10-504 of the Courts and Judicial Proceedings Article.

On the foregoing review of the Maryland precedents, we could dismiss the Plaintiff's request for reexamination of the election rule because it is too deeply embedded in our law to

change. But a reading of these cases makes plain that we are not dealing with a rule in reliance on which people order their affairs or structure their business transactions. It is not a rule with respect to which predictability of the result of its application should remain stable in order to protect past transactions. Indeed, from the standpoint of the principal and agent, the rule predicts only that an election must be made, but because the election is that of the creditor, the result of the election is not necessarily predictable. As Grinder would urge in the instant matter, the election could occur by operation of law and unintentionally from the creditor's standpoint. It is, as Judge Wilner characterized it, a "technicality." *Bryans Road Building & Supply Co. v. Grinder, supra,* 46 Md. App. at 14, 415 A.2d at 617. We shall therefore pursue the requested reexamination of the rule and attempt to fathom the reason underlying it.

In adopting the rule in Maryland *Codd* did not expressly articulate the underlying reason, but referred to authorities, the principal one of which is *Priestly v. Fernie,* [1865] 3 Hurlstone & C. 977 [Exchequer of Pleas], 140 Rev. R. 793.[4]

In *Priestly* the suit was against the owner of a ship based on a bill of lading signed by the master of the vessel.[5] Judgment had been obtained in Australia against the master, on which a later judgment in England was based. The master was imprisoned for the debt and subsequently obtained a discharge in bankruptcy. Judgment was for the owner. The

---

**4.** *Codd* also cites: (1) 1 J. Poe, *Pleading and Practice* § 378 (3d ed. 1897), which supports the rule by citation only to *Priestly;* (2) Curtis v. Williamson, L.R. 10 Q.B. 57 [1874] which holds that the mailing and resultant filing of a claim against the bankrupt agent's estate, before the creditor's countermanding telegram was received did not amount to a conclusive election precluding subsequent action against the principals; (3) Fowler v. Bowery Savings Bank, 113 N.Y. 450, 21 N.E. 172 (1889), which is not an agency case but does deal with a creditor's ratification of wrongful payment by the debtor to a third party; and (4) Lage v. Weinstein, 35 Misc. 298, 71 N.Y.S. 744 (1901), a reversal by the Supreme Court, Appellate Term, of a joint judgment, with new trial ordered on the ground that the plaintiff must elect between previously undisclosed principal and agent.

**5.** We would today likely view this as a case of partially disclosed principal as to which the rule of election does not apply. Small v. Ciao Stables, Inc., 289 Md. 554, 559, 425 A.2d 1030, 1033 (1981); Wheaton Lumber Co. v. Metz, *supra;* F. Mechem, *Outlines of the Law of Agency* § 157, at 104 (4th ed. P. Mechem 1952).

court had "no doubt" that "where the agent, having made a contract in his own name, has been sued on it to judgment . . . no second action would be maintainable against the principal." *Id.* at 982, 140 Rev. R. at 797-98. The underlying theory was that the agent makes one contract only which the merchant may say binds the agent because the contract is made in his name or may say binds the principal because made for him.

The reasons for the election rule, and specifically for the holding in *Priestly,* are furnished in the opinion of the Lord Chancellor, Earl Cairns, in the decision of the House of Lords in *Kendall v. Hamilton,* 4 App. Cas. 504, 514-15 (1879). They are (1) "it would be . . . contrary to justice that the creditor should be able to sue first the agent and then the principal, when there was no contract, and when it was never the intention of any of the parties that he should do so" (a windfall); (2) because the agent has a right of action for indemnity against his principal, "if the principal were liable also to be sued, he would be vexed with a double action" (vexation); and (3) the creditors "exhausted their right of action, not necessarily by reason of any election between two courses open to them, which would imply that, in order to an election, the fact of both courses being open was known, but because the right of action which they pursued could not, after judgment obtained, co-exist with a right of action on the same facts against another person" (merger).

It is clear that the merger analysis is not the basis of the Maryland decisions. The recognition in *Wheaton Lumber Co. v. Metz, supra,* that recovery of judgment against the agent before knowledge of the identity of the principal does not discharge the principal, is inconsistent with the concept that there is but one cause of action which merges into the judgment first obtained.

Nor is a justification for the election rule based on an avoidance of double litigation against the principal [6] fully consistent with our prior cases. Both *Codd* and *Hospelhorn*

---

6. Hill v. Hill, 34 Tenn. App. 617, 630, 241 S.W.2d 865, 870 (1951) states, *in dictum,* that this is the reason for the rule.

state the rule to be that the legal effect of an election is not given until a final judgment is entered. Commencement and prosecution of the first suit, short of final judgment, does not trigger the rule. If separate suits are involved and the first is against the agent, but is abandoned by the creditor prior to final judgment in order for him to sue the principal, the agent could make claim for indemnification for the reasonable cost of defense. Restatement (Second) of Agency § 438, Comment *e* (1957). Conversely, if the first action is pursued to judgment against the principal, but that judgment proves uncollectible, and a second action is brought against the agent, there is a hollow ring to the argument that the agent should be exonerated because he might seek indemnification from the principal whose non-payment precipitated the creditor's second suit. In any event, prevention of vexatious double litigation against the principal as an explanation for the election rule is greatly undercut by modern practice. If the agent is sued first, he may implead the principal as a third party defendant on the indemnification claim. If the parties are sued jointly, the agent may cross-claim for indemnity.

The one contract-no windfall rationale for the election rule was well stated in *Tabloid Lithographers, Inc. v. Israel,* 87 N.J. Super. 358, 365, 209 A.2d 364, 368-69 (1965) as follows:

> There is no reasonable basis for giving plaintiff a cause of action against both the agent and the principal when plaintiff contracted for only one. Giving plaintiff an alternative right to go directly against the principal is an additional advantage to the creditor. It permits the creditor to reach directly the agent's right to exoneration or indemnification. It puts the parties in the same position as if the agent had disclosed that he was acting for another. But since the creditor did not extend credit to the principal, he has the option of insisting on his original debtor or accepting the substitution of the principal for the agent. Before doing so, he can draw credit reports on both the agent and the principal. After

suit had been started he can explore the facts in discovery proceedings. He need not elect even up to the trial. But the entry of judgment against either one is a recorded public act of election and should be binding. It is neither unjust nor unreasonable to treat it so.

The leading decision espousing the opposite, but minority, view is *Beymer v. Bonsall,* 79 Pa. 298 (1875). There the buyer, with knowledge of the principal, had taken judgment against the agent for breach of a contract to sell petroleum. When the judgment remained unsatisfied, the buyer sued the principal and obtained judgment. In affirming, the Supreme Court of Pennsylvania, without citation of any authority, concluded (*id.* at 300):

> Undoubtedly an agent who makes a contract in his own name without disclosing his agency is liable to the other party. The latter acts upon his credit and is not bound to yield up his right to hold the former personally, merely because he discloses a principal who is also liable. The principal is liable because the contract was for his benefit, and the agent is benefited by his being presumedly the creditor, for there can be but one satisfaction. But it does not follow that the agent can afterwards discharge himself by putting the creditor to his election. Being already liable by his contract, he can be discharged only by satisfaction of it, by himself or another. So the principal has no right to compel the creditor to elect his action, or to discharge either himself or his agent, but can defend his agent only by making satisfaction for him.

Under the Pennsylvania rule, the liability of the agent and previously undisclosed principal is joint and several. *Joseph Melnick Building & Loan Ass'n v. Melnick,* 361 Pa. 328, 335, 64 A.2d 773, 777 (1949).

The Restatement of Agency has adopted the position that an undisclosed principal is discharged if, with knowledge of his identity, the creditor recovers judgment against the

agent, but that the principal is not discharged if judgment against the agent is taken without knowledge of the principal's identity. Restatement (Second) of Agency §§ 210, 337 (1957); Restatement of Judgments § 100 (1942). Comment *a* to § 210 frankly acknowledges the inconsistency of the theories. It recognizes that the rule of discharge "cannot properly rest upon a normal doctrine of election — that is, a definitive choice between alternatives — since only a judgment against the agent destroys the claim . . . ." It acknowledges that the exception for lack of knowledge seems to reject merger by judgment or that the contract is one by which the creditor is to have the liability of the principal or agent but not of both. Discharge of the principal is stated to be apparently inconsistent with "the basic reason underlying the liability of the undisclosed principal," namely that he is liable because of the agency relation, while the agent is liable because of his promise. "From this it is not possible to find a joint promise," but because of the lack of knowledge exception "it is difficult to conceive of a promise in the alternative." Discharge by judgment, however, "represents the prevailing judicial viewpoint . . . ."

How the American Law Institute arrived at the position stated in the Restatement is set forth in the explanatory notes, found in Temporary Draft No. 4 of March 1929, to § 435 of Restatement of Agency, for which Professor Seavey was Reporter. We quote liberally therefrom.

> The majority of cases is in accordance with the rule as stated in this Section. The minority view is that a judgment against the agent, although with knowledge of the principal's identity, should not discharge the principal from liability. The Reporter, his Advisers, and some members of the Council, believe that the minority is correct, and should be recognized as law because more consistent, more just and more desirable from a business standpoint, if the state of the authorities permits. The undisclosed principal is made liable originally upon the transaction, because he initiated it; because he

profits by it; because it is his business, conducted under his control. Policy requiring that he be liable, he should be discharged only if the debt is paid. There is doubt, however, as to the advisability of a statement contrary to the decisions of a number of very strong courts.

The doctrine of undisclosed principal came into the law during the period of mercantile expansion in which Lord Mansfield made business customs legally respectable and harmonized the law with mercantile desires. Some of the judges who came later did not fully understand the implications. The result is the subsequently adopted English view that there is but one obligation: and that this obligation is destroyed by obtaining a judgment against the agent, even before knowledge of the principal.

> Priestly v. Fernie, 3 H. & C. 977 (1865); Hammond v. Schofield, [1891] 1 Q. B. 453; M. Brennen & Sons v. Thompson, 33 Ont. L. R. 465 (1915).

The English view ignores, however, both the reason for the undisclosed principal's liability and commercial convenience, and has not been followed in this country. The American courts almost universally hold that getting a judgment against the agent before knowledge of the principal does not destroy the liability of the principal. From this it clearly appears that the third person has two distinct causes of action, both arising from the failure to perform the obligations of the contract. In other similar situations, as in the case of tort feasors, or persons severally liable upon a contract, judgment against one has no effect. Many of the American courts, however, have expressed a theory of "election" in the undisclosed principal cases, holding that if the other party elects, with knowledge of the facts, to hold the agent, he cannot afterwards hold the principal. This is contradictory to the idea that there are two distinct causes of action, unless it is

assumed that the two causes of action are mutually inconsistent. The two causes of action are not inconsistent, since the agent is liable because he made the contract, while the principal is liable because he caused it to be made. In fact it appears that the courts holding this view do not rely primarily upon election, since election is never found unless a judgment has been obtained. The effect of a judgment under the English view is conclusive; under the American view of "election," it should have no more effect than any other unequivocal manifestation of intention to abandon the claim against the principal. Furthermore, the fact that the other party gets a judgment against the agent, indicates no more than that he wishes to realize upon one of his causes of action, not that he abandons the other. This is especially true where he brings an action against both principal and agent, showing his desire to hold both.

The American cases supporting the alternative statement are, therefore, not consistent with the fundamental theory of undisclosed principal, nor with the decisions holding that judgment against the agent before knowledge of the principal is a bar, nor with the cases which fail to find "election" where the other party has done acts as certainly unequivocal as obtaining judgment against the agent. And, it is submitted, they are unjust, since as a result the principal who ordinarily profits from the transaction and who has not met his obligations is relieved by the mistake of the other party in believing that the agent has sufficient assets to pay the debt, since in all cases where the matter is of importance, the agent is insolvent.

The American Law Institute's position was almost immediately attacked by Professor Maurice H. Merrill in his article, *Election Between Agent and Undisclosed Principal: Shall We Follow the Restatement?*, 12 Neb. L. Bull. 100

(1933).[7] He reviewed the decisions state by state. He recognized that what one considered to be the numerical majority rule depended very much on the interpretation given to the then existing decisions. His reading of the cases for their holdings found five jurisdictions supporting the Restatement position [8] and four in which satisfaction of the obligation was the decisive test.[9] If *obiter dicta* were included in the examination, Merrill would add ten additional states as supporting election by judgment. On the other hand, if "those courts which treat the recovery of judgment against both principal and agent in the same action as a problem of procedure rather than of substance are properly to be aligned with the opponents of the Restatement rule," then Merrill would count eleven as favoring the Pennsylvania rule and four as favoring the Restatement rule. 12 Neb. L. Bull., *supra,* at 117.

---

**7.** And see Merrill, *Election (Undisclosed Agency) Revisited,* 34 Neb. L. Rev. 613 (1955).

**8.** Maryland: Codd v. Parker, *supra.*

Massachusetts: *See, e.g.,* Kingsley v. Davis, 104 Mass. 178 (1870). But the creditor who has recovered judgment against the agent may in equity, by subrogation to the agent's right of exoneration, compel payment by the principal. Evans, Coleman & Evans v. Pistorino, 245 Mass. 94, 139 N.E. 848 (1923). And see Ames, *Undisclosed Principal — His Rights and Liabilities,* 18 Yale L.J. 443, 449 (1909). This variation "has become no part of the accepted law of undisclosed principal." F. Mechem, *Outlines of the Law of Agency* § 161, at 107 (4th ed. P. Mechem 1952).

Mississippi: Murphy v. Hutchinson, 93 Miss. 643, 48 So. 178 (1909).

Missouri: *See, e.g.,* Sessions v. Block, 40 Mo. App. 569 (1890). But the point may be waived. Central Lumber & Mfg. Co. v. Reyburn-Laird Real Estate Bldg. & Constr. Co., *supra,* n.3.

New York: Georgi v. Texas Co., 225 N.Y. 410, 122 N.E. 238 (1919). New York subsequently adopted the satisfaction rule by statute. *See* N.Y. Civ. Prac. Law § 3002 (b) (Consol. 1974), first enacted by 1939 N.Y. Laws c. 128.

**9.** Arkansas: Williams v. O'Dwyer & Ahern Co., 127 Ark. 530, 192 S.W. 899 (1917).

Kentucky: *See, e.g.,* Hoffman v. Anderson, 112 Ky. 893, 67 S.W. 49 (1902). This classification assumes allowance of a claim in bankruptcy is the substantial equivalent of a judgment. *But see* Moore v. Spicer, 249 Ky. 464, 61 S.W.2d 5 (1933).

North Carolina: North Carolina Lumber Co. v. Spear Motor Co., 192 N.C. 377, 135 S.E. 115 (1926). While language in this opinion might support its classification as embracing the minority position, the case seems to treat the denial of an agency relationship by the principal, at the time default judgment is taken against the agent, as lack of knowledge by the creditor. In Walston v. R.B. Whitley & Co., 226 N.C. 537, 39 S.E.2d 375 (1946) it was flatly held that election must be made when the suit is brought, and cannot

On the issue of whether the election rule is justified because the creditor would otherwise be taking inconsistent positions, Merrill advanced the following argument (*id.* at 122):

> To pursue the agent, the third person maintains that the agent contracted with him. To hold the principal he asserts, not that the principal contracted with him, but that the principal for his own business purposes caused the agent to contract with him, and thereby came under an obligation imposed by the law to stand behind the agreement made by his tool. This does not deny the existence of the contract with the agent; it affirms it. The assertion of the liability of one is entirely in harmony with a claim against the other.

The commentators appear to be nearly unanimous in their support of the minority, *i.e.,* satisfaction, rule. Justice Story, in his *Commentaries on the Law of Agency* § 295, at 378 (3d ed. 1846), speaking of shipowner and master, expressed the opinion that, under the common law, a creditor was not precluded by judgment against one "from maintaining another action against the party not sued, unless, in the first action, he has obtained a complete satisfaction of the claim." (*Priestly v. Fernie, supra,* rejected Story's position and questioned his supporting authority.) F. Wharton, *A Commentary on the Law of Agency and Agents* § 473, at 307-08 (1876), opines that there is "much reason" for the satisfaction rule and refers to Justice Story's opinion to that effect, but notes that *Priestly* rejected that conclusion. E. Huffcut, *The Law of Agency* § 126, at 169 (2d ed. 1901) took the position that "[i]t is generally held that an unsatisfied judgment is not conclusive proof of an election [citing, *inter alia, Beymer v. Bonsall, supra*] though the ruling is otherwise in England and some of our States." 2 F. Mechem,

---

be deferred until time for judgment because the latter course would place an unnecessary burden upon trial and possibly lead to confusion.

Pennsylvania: Beymer v. Bonsall, *supra.*

*A Treatise on the Law of Agency* § 1759 (2d ed. 1914), wrote that "it cannot well be said that changing the form of the agent's obligation, or putting it into a condition in which it can be more readily enforced, is inconsistent with an intention to proceed against the principal also. Nothing short of satisfaction of the judgment against the agent would then release the principal as a matter of law, and some cases have so held." W. Seavey, *Studies in Agency* § 210 (1949) states that the American Law Institute "decided that it was coerced by the cases." He acknowledges that most of the cases which he has noticed since publication of the Restatement have been in accord with its position, but he then sets forth in his work the same analysis which appeared in the Restatement explanatory note, *supra.* P. Mechem, in his fourth edition of F. Mechem, *Outlines of the Law of Agency* § 159, at 105 (1952), refers to the "illogicality and unfairness of the conventional rule." He expresses the hope that the Pennsylvania view "will ultimately still prevail." *Id.* at 106.

Some highly respected judges share the same view. Judge Augustus Hand has said "that anything less than a complete satisfaction or an estoppel in pais affords no logical basis for barring a remedy against both agent and undisclosed principal . . . ." *Johnson & Higgins v. Charles F. Garrigues Co.,* 30 F.2d 251, 254 (2d Cir. 1929) (dissenting opinion). Judge Clarke, writing for Judges Swann and Frank as well, has called the election rule a "harsh doctrine, resting at most on a rather barren logic . . . ." *Ore Steamship Corporation v. D/S A/S Hassel,* 137 F.2d 326, 330 (2d Cir. 1943).

Ferson,[10] *Undisclosed Principals,* 22 U. Cin. L. Rev. 131, 142-44 (1953) presents an analysis and proposed solution in modern terms to the many anomalies which plague this problem. He states:

> [T]he third party can hold an undisclosed principal; he can also hold the agent; and, yet, he is entitled to only one performance. What is the theory of the

---

**10.** Merton L. Ferson, Dean Emeritus, College of Law, University of Cincinnati.

situation? It seems clear that when the agent of an undisclosed principal makes a contractual promise to a third person the result is not *one* obligation. It is *two* obligations. The agent is bound because he makes a contract that in terms is binding on him. The principal is bound owing to a different set of facts, *viz.* he assented — *i.e.,* offered to be bound if and when the agent should make such a contract. The condition is met when the agent makes his contract. The principal and agent each consented to assume, and thus created, his own obligation. The obligations are not of identical origin, and they bind different obligors even though each obligation would be broken or satisfied according to whether the obligee gets what is coming to him. "It would seem," says Professor Seavey, "that there are two groups of liabilities — one running between the third person and the agent and the other between the third person and the principal."

It should not be necessary to argue at this late date that a principal and his agent are not identical. But it was approved learning in earlier days . . . . Out of the false assumption that only one obligation was created by the agent's contract, has come a century of confusion and disagreement with regard to the liabilities of principal and agent.

When it is recognized that the third person acquires several rights against the principal and agent, there does not seem to be any reason of logic, justice or expediency why he should not have every advantage that accrues to any one else who has more than one right. Specifically his attempt to hold one obligor should not exonerate another obligor. And a merger of his claim against one into a judgment against that one should not take away his right against the other obligor. The several rights of a third person who has contracted with the agent of an undisclosed principal are comparable to the several rights acquired by a "creditor-beneficiary" for

whom a contract has been made. In that kind of a case, *A* promises *B* that *A* will pay *B*'s debt to *C*. The result is that *C* gets a right against *A,* and, of course, retains his right against *B.* In that situation, it is settled law that *C* can recover against either *A* or *B. C*'s attempt to hold one does not exonerate the other and *C*'s procurement of a judgment against one does not exonerate the other. *C* is, of course, entitled to only one payment of what is coming to him and insofar as he has been paid by one obligor it reduces the extent, but does not cut off the existence, of his claim against the other. [Footnotes omitted.] [Emphasis in text.]

The foregoing reasoning is unassailable on every ground other than its lack of strict adherence to the precedents. But we have demonstrated above that the election rule is not a "clear guide for the conduct of individuals, to enable them to plan their affairs with assurance against untoward surprise ...." *Moragne v. States Marine Lines, Inc.,* 398 U.S. 375, 403, 90 S. Ct. 1772, 1789, 26 L. Ed. 2d 339, 358 (1970) (overruling *The Harrisburg,* 119 U.S. 199, 7 S. Ct. 140, 30 L. Ed. 358 (1886) and holding that an action lies under general maritime law for death caused by violation of maritime duties (opinion by Mr. Justice Harlan). Were *Codd* and its progeny to be overruled, no new duty or liability would be imposed. The principal who acts through an agent who appears to be a principal has a liability to the third party. So does the agent. Both the undisclosed principal and the agent know that either of them may be called upon to satisfy the creditor's demand. And if the creditor proceeds to judgment against the agent without knowledge of the principal's identity, he may have judgment against both.

It is only in the class of cases where a final judgment is first taken against the principal, or against the agent with knowledge of the principal's identity, that the election rule comes into play. Cases falling into this class seemingly would not occur with frequency because the agent, if sued first, would give notice to the principal to defend in order to

bolster the agent's position to claim indemnification, and the case should ordinarily be defended on the merits. In cases where election can become an issue, we are satisfied that adherence to *Codd* will create more unjust results and generate more mischief than would a change in the law to a rule that looks to one satisfaction. Under the *Codd* rule, if the problem arises out of separate actions, the second suit will likely have been brought because the judgment in the first action has not been satisfied. If judgment in the second action is denied solely because the law considers an election to have taken place, a just claim has necessarily been thwarted. If the creditor proceeds in an action in which both principal and agent are joined, an interlocutory judgment against one defendant, *e.g.,* by default or through summary judgment, can become a trap. It could leave the creditor with but one, possibly uncollectible, judgment, unless the election rule is further eroded, as some courts have done, by a requirement that an adversary call upon the plaintiff to elect before the first judgment is taken. The need to resort to this variation strongly suggests the dissatisfaction of courts with the basic election rule. If, in a joint action, the proceedings against each defendant are in tandem and the plaintiff is entitled, under the election rule, to a judgment against either, the decision requires knowledge of relative assets. This is not ordinarily a subject of pre-trial discovery and the choice involves the risk that the judgment opted for may prove to be uncollectible, while a solvent party may be discharged, because his liability is viewed as "alternative."

We deal here with a question of whether a judge made legal theory has become outmoded. This is traditionally a matter for a state court of highest resort. Modern practitioners have no difficulty in viewing the liability of the undisclosed principal to the creditor as founded in a policy of the law which looks to the reality that the undisclosed principal, for his business purposes, has authorized the contract through his agent, even though the creditor may have intended to form a contract only with the agent.

The rule of election first enunciated by this Court in *Codd* is overruled. We hold that a creditor who contracts with the

agent for an undisclosed principal does not obtain alternative liability, that he may proceed to judgment against both, but that he is limited to one satisfaction.

> *Judgment of the Court of Special Appeals vacated.*
>
> *Case remanded to that court for the entry of a judgment remanding this case to the Circuit Court for Charles County with directions to enter judgments consistent with this opinion.*
>
> *Costs to be paid by G. Elvin Grinder.*