[No. 4974. Decided April 12, 1904.]

CLYDE LANDERS, *Appellant,* v. HARRISON G. FOSTER *et al.,*
*Respondents.*[1]

CONTRACTS—EXECUTION—BILL OF SALE TO AGENT OR TRUSTEE—
LIABILITY OF PRINCIPAL WHERE AGENCY IS DISCLOSED. Where parties jointly entered into a contract with another, and for convenience provide for the making of a bill of sale to one of their number instead of to each individually, he becomes their trustee, and they can not escape liability upon the theory that he acted as their agent, and that principal and agent being both known to the other contracting party, exclusive credit to the agent released them from liability.

SAME—EVIDENCE BY PAROL TO SHOW AGENCY OF PARTY EXECUTING CONTRACT. Where one of several co-obligors for convenience closes up the contract by taking a bill of sale in his own name, but in fact as trustee for the others, parol evidence is admissible to show who the actual contracting parties were.

CONTRACTS—CONSTRUCTION—CONTINGENCY OF ISSUANCE OF PATENT—PLEADING. Where a payment under a contract was to be made when letters patent were granted upon an invention, the complaint sufficiently shows that the contingency has occurred by an allegation that the commissioner of patents made an order

[1]Reported in 76 Pac. 274.

allowing the patent and directing that a patent issue on the order of the interested parties therefor.

Appeal from a judgment of the superior court for Pierce county, Snell, J., entered April 12, 1903, sustaining a demurrer to the complaint, dismissing an action for damages for breach of contract. Reversed.

*E. W. Taylor* and *R. H. Lund,* for appellant.

*C. M. Riddell, John A. Shackleford,* and *J. M. Ashton,* for respondents.

DUNBAR, J.—The appellant invented an electric air heating fan, for which he made application to the United States commissioner of patents for a patent. Pending the issuance of the patent, the following agreement was executed between the appellant and one Arthur E. Grafton:

"This agreement, made this 20th day of March, 1901, by and between Clyde Landers, party of the first part, and Arthur E. Grafton, party of the second part, both of Tacoma, Pierce county, Washington, provides:

"FIRST: That in consideration of the sum of one dollar, the receipt whereof is hereby acknowledged, Clyde Landers gives to Arthur E. Grafton an option on a controlling interest (towit: 51 per cent) in an electric device known as an air heating fan, the principle of which is involved completely in a machine now in operation at the Tacoma Hotel Barber Shop, Olympic Club Barber Shop, and various other places in the city of Tacoma, application for the patent of which has been filed with Munn & Co., patent attorneys of Washington, D. C., and the first payment of $25 for which has been made and acknowledged. Said option to last and bind fast said Clyde Landers until Monday at 2 P. M. March 25th, 1901.

"SECOND: That if the said Arthur E. Grafton secures and pays to Clyde Landers on or before the date and hour specified the sum of one thousand (1000) dollars, then this shall be accepted by Clyde Landers as a portion of the pur-

chase price of 51% interest in the above described application for patent for which has been made.

"THIRD: Said Clyde Landers agrees that upon payment of the above mentioned $1000 he will absolutely refuse and cease to consider any offer or proposition to sell, lease or dispose of any further interest in the device or to manufacture or offer for sale, any of the machines using the principle of this air heating fan.

"FOURTH: That as soon as a patent shall have been regularly issued by the patent office at Washington, D. C., then shall be paid to Clyde Landers the further sum of $4000 which shall be full and complete payment for this 51% interest in the title and patent aforesaid air heating fan. If no patent is issued, no recourse shall be made on Clyde Landers for the first payment of $1000.

"FIFTH: The purchaser of this 51% interest must agree to organize a non-assessable corporation and issue to Clyde Landers 49% of the capital stock. As a further consideration Clyde Landers agrees to invent and furnish free of charge to the corporation which shall be formed as above described, all devices and improvements which he shall invent or make for a period of ten years from date of this above described invention, provided that said corporation shall stand all costs and expenses of experiments and improvements and regularly employ said Clyde Landers at a salary to be agreed upon, not to exceed two hundred dollars per month."

On March 25, 1901, the date on which the option of Grafton expired, according to the complaint, the respondents, for the purpose of securing and carrying out the terms of the said option, entered into a contract which is stated in appellant's amended complaint as follows:

"(1) That prior to the —— day of March, 1901, the plaintiff herein invented a certain 'electric air heating fan' and thereupon made application to the commissioner of patents of the United States, in Washington, D. C., for the issuance of a patent thereon.

"(2) That afterwards and on the 5th day of March, 1902, the said commissioner of patents at Washington, D. C.,

according to the specifications referred to in plaintiff's exhibit 'B' hereto attached, duly made an order allowing the said patent so applied for on the said 'electric air heating fan' and then and there directed that a patent issue therefor on the order of the parties applying therefor, or their successors or assigns.

"(3)   That after said patent had been applied for and before the same had been allowed, and on or about the 25th day of March, 1901, plaintiff herein entered into an agreement with the defendants, by the terms of which agreement plaintiff agreed to sell, and the defendants agreed to purchase from plaintiff 51% of the said device.

"(4)   That at the time of the making of the said agreement, it was agreed by the defendants and the plaintiff in part consideration of the sale and the transfer to them of the said 51% of the said 'electric air heating fan' that then the defendants on their part would pay, or cause to be paid to the plaintiff, the sum of $5,000, $1,000 to be in cash in hand and the sum of $4,000 to be paid to the said Clyde Landers by the defendants as soon as a patent should be regularly granted by the commissioner of patents at Washington, D. C.   All of which is more fully set forth in a certain memoranda and agreement made and entered into on the 5th day of March, 1901, by and between the defendant Arthur E. Grafton and the plaintiff, giving to the said Grafton an option for the purchase of the said 51% of the said device; and the said Grafton then and there agreeing within the time specified to secure and pay to the plaintiff herein the said several sums of money therein designated and in pursuance thereof and in accordance with the terms of the said option and agreement, the said defendants and all of them accepted and approved the terms of the said agreement, and then and there on the 25th day of March, 1901, agreed to and with the plaintiff herein that in consideration of the transfer to them of the said 51% as set forth in the said option, that then they, the defendants, and each of them would perform or cause to be performed each and every of the terms of said agreement and fulfill its conditions and particulars, and in particular to pay to the plaintiff the sum of money as therein

stated. And then and there did pay to the plaintiff the sum of $1,000 in accordance with the terms of the said option. A copy of the said agreement is attached hereto and marked exhibit 'A' and incorporated in and made a part of this complaint for a more full and complete statement of the conditions therein.

"(5) That on the 25th of March, 1901, plaintiff herein, for the further purpose of carrying out said agreement and contract, and under the direction of and at the request of the defendants herein, made and executed to the defendants in the name of Harrison G. Foster, who was by the defendants nominated as representative of the said defendants herein, a bill of sale, wherein and whereby he conveyed to the said defendants in the name of the said Harrison G. Foster, their trustee, and who was by the said defendants nominated and designated to accept and receive the said conveyance, the 51% interest in and to the said invention known as an 'electric air heating fan,' and for which the said patent had theretofore been applied for, and by the terms of which bill of sale the commissioner of patents at Washington, D. C., was authorized and directed to issue the said letters patent for the said 'electric air heating fan' to the said Harrison G. Foster, and to the said Clyde Landers, jointly, 51 per cent thereof, and 49 per cent thereof to the said Clyde Landers. All of which is more fully set forth in that certain bill of sale, executed March 25, 1901, by the plaintiff herein to the said Harrison G. Foster, a copy of which is hereto attached and marked exhibit 'B' and to which reference is hereby made, and incorporated and made a part of this complaint. That at the time the agreement marked exhibit 'B' was executed the plaintiff knew that the said Foster was acting for and on behalf of the defendants.

"(6) That no part of the said $5,000 has been paid by the said defendants except the sum of $1,000 which was paid at the time of the making of said agreement, March 25, 1901, leaving a balance wholly unpaid and long past due upon the said contract in the sum of $4,000, together with interest thereon at legal rate from the 5th day of March, 1902, the date when the said patent was allowed;

for which sum the plaintiff has requested and demanded
but the defendants and all of them have failed, neglected
and refused to pay any part thereof."

The complaint further sets forth a second cause of ac-
tion, viz., the failure of the respondents to organize and
conduct the business as alleged in the first part of the com-
plaint; and a third cause of action, viz., the reasonable
value of appellant's services in and about the manufacture
of the said implements, which is alleged to be $150 per
month; with the other necessary allegations.  Judgment
was demanded, (1) for the sum of $4,000 alleged to be
due on account of the sale of fifty-one per cent of the said
"electric air heating fan;" (2) that appellant have and
recover against the respondents judgment for $5,000 dam-
ages sustained by reason of the failure of the respondents
to perform their contract to organize a corporation and
conduct and carry on the business of said "electric air
heating fan;" and (3) for the sum of $1,350 for failure
of respondents to employ appellant, as agreed upon in the
said contract, since the 1st day of March, 1902; amount-
ing in all to the sum of $10,350, together with interest on
$4,000 thereof at the legal rate from the 5th day of
March, 1902, and for appellant's costs and disbursements
expended.

Service of summons was had upon all of the respond-
ents, with the exception of Harrison G. Foster and ———
Smith, who are nonresidents and out of the jurisdiction
of the court.  The respondents appeared by separate attor-
neys, and filed general demurrers to the amended com-
plaint.  The court sustained the demurrers.  The appellant
elected to stand upon the amended complaint, judgment
was entered dismissing the cause, and for costs of suit, and
appeal taken.

We are unable to determine upon what theory the de-

murrers were sustained. It is asserted by the respondents, that, where an agent contracts in his own name, but his principals are disclosed and are known by the other party, the creditor cannot hold both the principals and the agent liable, and the taking of a note or written agreement to pay, signed by the agent as an individual, will constitute an election to treat the sale as made on the credit of the agent; that, in such a case, the maker of the agreement to pay cannot release himself from liability by showing that he acted as an agent for others; citing, *Shuey v. Adair,* 18 Wash. 188, 51 Pac. 388, 39 L. R. A. 473, 63 Am. St. 879. But, while this may be true, we hardly see its applicability to the case in point. Assuming Foster to be an agent, he is not here asking to be exonerated from responsibility, or released from the liability growing out of the agreement. This was what was decided in *Shuey v. Adair, supra,* viz. : that, in an action by a holder against the maker of a promissory note, the latter cannot, on the ground that he executed the note as an agent, require the alleged principals to be made party defendants, and escape liability himself.

Appellant cites, as directly in point, *In re Bateman,* 28 N. Y. Supp. 36. But all that that case holds is that, if the contracting party knew the principal at the time of the contract, and yet chose to engage with the agent, he is estopped afterwards to go against the principal, but that he may pursue an undisclosed principal. But there is no question in this case of undisclosed principals, for the complaint alleges, and the demurrer confesses, that the contract in this case was entered into with all of the respondents; that they agreed to and with the appellant that, in consideration of the transfer to them of the said fifty-one per cent, as set forth in the said option, they—the respondents—and

each of them, would perform, or cause to be performed, each and every of the terms of said agreement, and fulfill its conditions, etc., and that, for the purpose of carrying out said agreement and contract, and under the direction of and at the request of the respondents herein, the appellant made and executed to respondents, in the name of Harrison G. Foster—who was by the respondents nominated as their representative herein—the bill of sale, etc.; that the respondents constituted, for this purpose, the said Harrison G. Foster their trustee, nominated and designated by them to accept and receive the conveyance. Our statute makes the requirement of a complaint a plain statement of facts constituting the cause of action. Here is a plain statement of facts, the facts being that these respondents, not through their agent, but in their own proper persons, entered into this contract with the appellant, simply (presumably for convenience) providing for the making of the bill of sale to one of their number, instead of to each individually. If it were held that, under such circumstances as these, parties making the contract could escape liability because the business was to be done through a trustee, all contracts of a trust nature would be seriously endangered.

The authorities cited by the appellant seem to us to be cited under a misapprehension of the principles involved. They are all cases where the transaction was with the agent, instead of with the principal, and questions arose in those cases as to whether the principals had been released from liability by reason of credit given to the agent. Thus, Story on Agency (9th ed.), § 447, cited by respondents, is to the effect that, "The exceptions to this liability of the principal may easily be gathered from what has been already stated. If the principal and agent are both known, and exclusive credit is given to the latter, the principal

will not be liable, although the agent should subsequently fail; for it is competent for the parties to agree to charge one, exonerating the other; and an election, when once made, becomes conclusive and irrevocable." But the preceding section, 446, states that, "The fact that the agent has contracted in his own name in writing, yet with the assent of his principal, and for his benefit, will not exclude the principal from liability, unless exclusive credit is given to the agent." And so with all the other cases cited, although in *Hill v. Miller,* 76 N. Y. 32, exactly the opposite doctrine is announced, for there it is said:

"It is also urged that the contract was not properly executed. It is signed 'Thos. Mills, agent, for P. R. Miller.' Such a contract if actually made in pursuance of authority may be signed by the agent in his own name, and the principal will be liable;"

citing *Briggs v. Partridge,* 64 N. Y. 357, 21 Am. Rep. 617, and *Dykers v. Townsend,* 24 N. Y. 57.

But here, if the allegations of the complaint be true—and such allegations, if well pleaded, are confessed by the demurrer—there is no question of contracting with an agent, but the contract was made directly with the respondents. So that the only possible question that could be raised was, whether or not, the agreement having been made in the name of Foster, parol testimony could be introduced to show who the actual contracting parties were. And we think that such has been the law from time immemorial. So far back as *Trueman v. Loder,* 11 Adolp. & Ellis 178, it was said that parol evidence was always necessary to show that the party sued was the person making the contract, and bound by it.

"Whether he does so in his own name," said the court, "or in that of another, or in a feigned name, and whether the contract be signed by his own hand or by that of an

agent, are inquiries not different in their nature from the question who is the person who has just ordered goods in a shop. If he is sued for the price, and his identity made out, the contract is not varied by appearing to have been made by him in a name not his own."

See, also, *Dykers v. Townsend, supra; Briggs v. Munchon,* 56 Mo. 467.

It is also contended by the respondents that, under the terms of the agreement pleaded, the sum of $4,000 was to be paid when letters patent were granted for said invention, and that the complaint does not allege that letters patent have ever been granted; that the allowance of a patent, and the direction that it be issued, is a very different matter from the granting and issuing of a patent. But we think this criticism of the complaint is hypercritical. The complaint alleges, "that afterwards and on the 5th day of March, 1902, the said commissioner of patents, at Washington, D. C., according to the specifications referred to in plaintiff's exhibit 'B' hereto attached, duly made an order allowing the said patent so applied for on the said 'electric air heating fan' and then and there directed that a patent issue therefor on the order of the parties applying therefor, or their successors or assigns." The patent office had done all that it was required to do until the patent was called for by the parties entitled to it, and we think that this brings the case fairly within the contemplation of the contract that the money was to be paid when the patent was issued.

The complaint states a good cause of action, and the judgment is therefore reversed and the cause remanded, with instructions to overrule the demurrers to the complaint.

FULLERTON, C. J., and HADLEY and MOUNT, JJ., concur.