[No. 54253-8.  En Banc.  June 9, 1988.]

CROWN CONTROLS, INC., *Respondent*, v. JIM SMILEY, *Petitioner*.

*Trujillo & Peick, P.S.,* by *John C. Peick,* for petitioner.

*Jeffrey C. Wishko* (of *LeSourd & Patten, P.S.*), for respondent.

DURHAM, J.—The issue presented in this case is if the "election of remedies" doctrine should be applied when an agent fails to adequately disclose the identity of the principal on whose behalf he is contracting. This court has previously held that in such circumstances, a creditor must elect whether it will seek to hold the agent or the principal liable for the debt. Under prior law, a judgment received against one discharges the other from liability, as long as the creditor has already learned of the existence and identity of the previously undisclosed principal. However, this "election of

remedies" doctrine has become outdated and unjustifiably restrictive of creditors' rights. Accordingly, we conclude that the doctrine should no longer be applied in this context. Instead, agents and undisclosed principals henceforth face joint and several liability.

# I
## FACTS

Crown Controls, Inc. is a Washington corporation based in Lynnwood that acts as a sales representative for various suppliers of chemical control equipment. Its president and principal stockholder is Michael Slomer.

Jim Smiley operates a manufacturer's representative/distributorship business out of his residence in Bend, Oregon. Smiley used to own the trade name "Industrial Associates", but in January 1983 he transferred ownership of that name to an Oregon corporation called North American Drill Supply, Inc. (Drill Supply). Pursuant to the laws of Oregon, Drill Supply registered its ownership of that name. On that registration form, Smiley is listed as the authorized representative of Drill Supply. Moreover, as of the time relevant to this case, Smiley was the president of Drill Supply and owned 75 percent of its stock, while his ex–wife owned the other 25 percent.

In June 1983, Smiley and Drill Supply had a customer in Guam who needed gas chlorination equipment for an irrigation project. Smiley telephoned Slomer of Crown Controls, identifying himself as an agent of Industrial Associates. After several telephone discussions regarding various items of equipment and their prices, Slomer agreed to supply and Smiley agreed to purchase gas chlorination equipment. It was subsequently delivered to and accepted by Smiley and Drill Supply's shipping agent in Portland, Oregon. Crown Controls billed Industrial Associates for $9,136.03.

Throughout the course of the negotiations between the parties, Smiley never disclosed to anyone at Crown Controls that he was acting on behalf of a corporate entity; he

indicated only that he was an agent for "Industrial Associates". Crown Controls was not informed of Drill Supply's existence until litigation commenced.

At the same time as this transaction, Smiley and Drill Supply also ordered pump control valves from Crown Controls. The Guam customer eventually encountered problems with these valves and returned them to Crown Controls' supplier.

In December 1983, in response to repeated demands for payment for the gas chlorination equipment, Smiley tendered a check to Crown Controls in the amount of $5,547.92, an amount less than the $9,136.03 that was billed, on the "express condition that it is in full and complete satisfaction of all my obligations to you . . ." The lower amount represented an offset for damages attributable to the problems encountered with the rejected pump control valves. Crown Controls refused to accept payment on this condition and returned the check to Smiley.

Crown Controls filed a complaint against Smiley and Drill Supply in Snohomish County in order to collect the full amount billed for the chlorination equipment. Drill Supply responded by suing Crown Controls in an Oregon state court, seeking to recover damages attributable to the pump control valves. Smiley and Drill Supply also asserted these same damages as an affirmative defense in the Snohomish County action. The Oregon action was removed to federal court, where Drill Supply eventually received judgment in the amount of $3,363.11, plus interest.

In the Snohomish County action, Crown Controls moved for summary judgment. The trial court granted summary judgment against Drill Supply, doing business as Industrial Associates, but refused to grant summary judgment against Smiley, concluding that a material issue of fact existed concerning if Smiley had disclosed that he was acting on behalf of Drill Supply. Crown Controls tried to collect on the judgment against Drill Supply by garnishing its bank account in supplemental proceedings, but this proved unsuccessful because that account had already been closed.

Trial was held on March 14, 1985 on the issue of Smiley's liability. The court concluded that it had personal jurisdiction over Smiley and that Smiley had breached his contract to pay for the chlorination equipment. The trial court further determined that Smiley had not sufficiently disclosed that he was acting on behalf of Drill Supply, causing Smiley to become personally liable for the debt. The court then held that Crown Controls had to elect whether it would pursue Smiley or Drill Supply in collecting on its judgment. Crown Controls elected to pursue Smiley, so the court vacated the earlier summary judgment Crown Controls had received against Drill Supply. Judgment was entered in the amount of $9,136.03, plus prejudgment and postjudgment interest.

Smiley appealed this judgment to the Court of Appeals. That court affirmed the trial court's holding that personal jurisdiction over Smiley was properly exercised, and that he had failed to properly disclose the existence and identity of Drill Supply. However, the Court of Appeals rejected the election of remedies doctrine. Instead, the court imposed joint and several liability against Smiley and Drill Supply. *Crown Controls, Inc. v. Smiley,* 47 Wn. App. 832, 848, 737 P.2d 709 (1987).

Smiley filed a petition for review in this court, challenging the Court of Appeals decision with respect to each of the issues discussed in the preceding paragraph. This court accepted review.

## II
### ANALYSIS

In his first two issues, Smiley challenges the Court of Appeals conclusions that he had subjected himself to long–arm jurisdiction in this state and that he failed to disclose adequately the identity of Drill Supply in his negotiations with Crown Controls. We conclude that the Court of Appeals opinion fully and properly analyzed these issues, and those portions of the opinion are adopted here.

In his third issue, Smiley argues that by obtaining a judgment against Drill Supply, and by attempting to collect on that judgment, Crown Controls elected to give up their rights against him. In support, Smiley points to this state's "election of remedies" doctrine. Under that doctrine, the liability of an agent and his undisclosed principal on a contract is only in the alternative. In other words, after learning all the relevant facts, a creditor must elect whether he will hold the agent or the principal liable for the debt. *Maxwell's Elec., Inc. v. Hegeman–Harris Co. of Can., Ltd.,* 18 Wn. App. 358, 362, 567 P.2d 1149 (1977). A creditor who elects to hold the previously undisclosed principal liable thereby discharges the agent, even if the creditor subsequently discovers that the principal is insolvent. *Pennsylvania Cas. Co. v. Washington Portland Cement Co.,* 63 Wash. 689, 116 P. 284 (1911); *Chapman v. Ross,* 152 Wash. 262, 277 P. 854 (1929). Furthermore, the entry of a judgment against the principal amounts to an election to forgo collecting from the agent. *Chapman,* at 267–68.

As the Court of Appeals recognized, this doctrine has been a part of Washington case law since the turn of the century, and has been invoked many times, usually in dicta, although its rationale has never been set forth in any great detail. The cases cited by the Court of Appeals indeed bear this out. *See Glover v. Tacoma Gen. Hosp.,* 98 Wn.2d 708, 658 P.2d 1230 (1983); *Turnbull v. Shelton,* 47 Wn.2d 70, 286 P.2d 676 (1955); *Patent Scaffolding Co. v. Roosevelt Apartments, Inc.,* 171 Wash. 507, 18 P.2d 857 (1933); *Le Vette v. Hardman Estate,* 77 Wash. 320, 137 P. 454 (1914); *McDonald v. New World Life Ins. Co.,* 76 Wash. 488, 136 P. 702 (1913); *Landers v. Foster,* 34 Wash. 674, 76 P. 274 (1904).

■ Generally, opinions issued by this court are binding on the lower courts until they are overruled. *State v. Gore,* 101 Wn.2d 481, 487, 681 P.2d 227, 39 A.L.R.4th 975 (1984); *Nielson v. Wolfkill Corp.,* 47 Wn. App. 352, 356, 734 P.2d 961, *review denied,* 109 Wn.2d 1008 (1987). In this case, the

Court of Appeals rejected the "election of remedies" rule as being "illogical and contrary to the policy favoring full compensation of wronged parties." *Crown Controls,* at 842. Accordingly, we accepted review to independently determine if a creditor should be forced to elect his remedies when suing an agent and an undisclosed principal. In undertaking that analysis, however, we have concluded that much of the Court of Appeals reasoning is persuasive, portions of which are restated here.

Evaluation of the relative merits of the "election of remedies" doctrine in this context can be reduced to the following dilemma: legal commentators generally consider joint and several liability to be the better reasoned approach, but alternative liability has been the rule in this state for decades and it has long been the majority rule in other jurisdictions as well. For example, the Reporter for the American Law Institute stated that the Restatement adopted the theory of alternative liability because it felt bound by judicial precedent in the majority of jurisdictions, but felt the minority rule to be better reasoned. *See Grinder v. Bryans Rd. Bldg. & Supply Co.,* 290 Md. 687, 699–700, 432 A.2d 453 (1981) (citing Restatement of Agency § 435, explanatory notes (Temp. Draft No. 4, 1929)). Each of these considerations will be evaluated in greater detail, beginning with the relative merits of applying the doctrine in the context of undisclosed principals.

We have recognized in an earlier case the harsh nature of the "election of remedies" doctrine in general. *Barber v. Rochester,* 52 Wn.2d 691, 695, 328 P.2d 711 (1958). We have also indicated that:

> The doctrine of election of remedies is applicable only where there are available to the litigant at the time of the election, two or more coexistent remedies, which are repugnant and inconsistent. This rule is upon the theory that, of several inconsistent remedies, the pursuit of one necessarily involves or implies the negation of the others. The rule does not apply where the remedies are cumulative merely.

*Willis T. Batcheller, Inc. v. Welden Constr. Co.,* 9 Wn.2d 392, 403–04, 115 P.2d 696 (1941), *quoted in Labor Hall Ass'n v. Danielsen,* 24 Wn.2d 75, 84, 163 P.2d 167, 161 A.L.R. 1079 (1945). Accordingly, we must determine if it would be "repugnant and inconsistent" to allow creditors to have simultaneous remedies against an agent and his undisclosed principal.

The Court of Appeals relied heavily on the reasoning from a Maryland case that replaced the "election of remedies" rule in this context with a rule stating that judgments may simultaneously be entered against an agent and his undisclosed principal, although only one satisfaction may be obtained. *See Grinder v. Bryans Rd. Bldg. & Supply Co., supra.* This latter rule can be described more generally as joint and several liability, because it allows a creditor to collect from the agent, the principal, or both, until the judgment has been fully satisfied.

As *Grinder* points out, the "election of remedies" rule in the context of undisclosed principals was traditionally justified by three arguments. Two of these arguments, however, are clearly inadequate.[1] The remaining argument justifying the tradition of alternative liability is the "one contract–no windfall" rationale. According to this rationale, the plaintiff has only contracted for one cause of action and would receive an unjustified windfall if the creditor were allowed to sue the agent and the principal simultaneously. *See Grinder,* 290 Md. at 697.

---

[1]These arguments can be summarized as follows. First, alternative liability was intended to protect the principal from the vexation of having to defend two suits, one brought by the creditor and the other brought by the agent seeking indemnity for his own liability. This argument, however, does not adequately support the current theory of alternative liability, because modern pleading practice allows for impleading and consolidation of actions. Second, the theory was traditionally predicated on merger analysis, which stated that two rights of action brought against different parties, but based on the same set of facts, could not coexist when one action had been reduced to judgment. Merger analysis fails, however, in explaining why recovery of judgment against the agent *before* learning about the existence of an undisclosed principal does not bar a subsequent action against the principal. *Grinder,* 290 Md. at 696–97.

However, opponents of alternative liability stress that a creditor has two distinct causes of action, both arising from the failure to perform the obligations of the contract. The undisclosed principal becomes liable because he initiates the contract and profits by it; the agent becomes liable because of his promise. These opponents maintain that the assertion of liability of either the agent or the principal is entirely in harmony with a claim against the other. *See, e.g.*, Merrill, *Election Between Agent and Undisclosed Principal: Shall We Follow the Restatement?*, 12 Neb. L. Bull. 100, 122 (1933), *cited in Grinder*, 290 Md. at 703. This position has been maintained by most of the commentators, who "appear to be nearly unanimous in their support of the minority, *i.e.*, satisfaction, rule." *Grinder*, 290 Md. at 703–04 (citing J. Story, *Agency* § 295, at 378 (3d ed. 1846)); F. Wharton, *Agency and Agents* § 473 (1876); F. Mecham, *Agency* § 159 (1952); Ferson, *Undisclosed Principals*, 22 U. Cin. L. Rev. 131, 142–44 (1953).

Furthermore, there is no "windfall" to the creditor. Although he can seek to recover damages from more than one party, his aggregate recovery is limited by the amount of the judgment. Indeed, as the Court of Appeals pointed out, retention of the current law constitutes an unjustified windfall for the debtors who are able to use the doctrine to avoid debts that they are otherwise obligated to pay.

The opponents of alternative liability also point out the inequities created by that doctrine. As the *Grinder* court stated:

> In cases where election can become an issue, we are satisfied that adherence to [alternative liability] will create more unjust results and generate more mischief than would a change in the law to a rule that looks to one satisfaction. Under the [alternative liability] rule, if the problem arises out of separate actions, the second suit will likely have been brought because the judgment in the first action has not been satisfied. If judgment in the second action is denied solely because the law considers an election to have taken place, a just claim has necessarily been thwarted. If the creditor proceeds in an action

in which both principal and agent are joined, an interlocutory judgment against one defendant, *e.g.,* by default or through summary judgment, can become a trap. It could leave the creditor with but one, possibly uncollectible, judgment, unless the election rule is further eroded, as some courts have done, by a requirement that an adversary call upon the plaintiff to elect before the first judgment is taken. The need to resort to this variation strongly suggests the dissatisfaction of courts with the basic election rule. If, in a joint action, the proceedings against each defendant are in tandem and the plaintiff is entitled, under the election rule, to a judgment against either, the decision requires knowledge of relative assets. This is not ordinarily a subject of pre–trial discovery and the choice involves the risk that the judgment opted for may prove to be uncollectible, while a solvent party may be discharged, because his liability is viewed as "alternative."

*Grinder,* 290 Md. at 707.

Other courts have also found the logic of the Maryland court to be persuasive. The *Grinder* rationale has been adopted in Minnesota and implicitly approved of by dictum in Oregon. *Engelstad v. Cargill, Inc.,* 336 N.W.2d 284 (Minn. 1983); *Carter v. Forstrom,* 80 Or. App. 213, 722 P.2d 23 (1986). Additionally, the drafters of the Restatement have stated that the "trend in development of the law" is to reject the theory that entry of judgment against a previously undisclosed principal releases the agent. Restatement (Second) of Judgments § 49, comment *c* (1982). We conclude that the *Grinder* rule of joint and several liability is the better reasoned approach, and that coexistent remedies against the agent and principal would be neither inconsistent nor repugnant.

■ Finally, we believe that a decision not to apply the "election of remedies" doctrine to these facts would not contravene the principles of stare decisis. When a certain legal principle has already been established in a jurisdiction, there is much to be said for its continued existence. The continuity of legal principles allows citizens to choose courses of action with a reasonable expectation of what the

future legal consequences will be, even if those consequences might not arise for a considerable period of time. These interests, together with a desire to provide a society of laws and not of men, form the basis for the theory of stare decisis. *In re Stranger Creek,* 77 Wn.2d 649, 652, 466 P.2d 508 (1970). However, the goal of obtaining stability in the law does not always justify the continued existence of clearly outdated rules. As we have stated several times:

> Stare decisis is a doctrine developed by courts to accomplish the requisite element of stability in court–made law, but is not an absolute impediment to change. Without the stabilizing effect of this doctrine, law could become subject to incautious action or the whims of current holders of judicial office. But we also recognize that stability should not . . . be confused with perpetuity. If the law is to have a current relevance, courts must have and exert the capacity to change a rule of law when reason so requires. The true doctrine of stare decisis is compatible with this function of the courts. The doctrine requires a clear showing that an established rule is incorrect and harmful before it is abandoned.

*In re Stranger Creek,* at 653, *quoted in In re Mercer,* 108 Wn.2d 714, 720–21, 741 P.2d 559 (1987) *and House v. Erwin,* 83 Wn.2d 898, 909, 524 P.2d 911 (1974).

In this regard, we find it unlikely that many citizens have relied on the "election of remedies" rule in ordering their legal affairs in this area. Moreover, we note that the Maryland court was apparently correct in its conclusion that "adherence to [alternative liability] will create more unjust results and generate more mischief than would a change in the law . . ." *Grinder,* 290 Md. at 707. In the almost 7 years since *Grinder* was filed, there have been no reported decisions in Maryland citing that case, indicating that the citizens of that state have had little difficulty in adapting to the new rule. For these reasons, as well as those given above concerning the inequitable nature of the "election of remedies" doctrine, we conclude that the doctrine in the context of undisclosed principals is incorrect and harmful.

In conclusion, we hold that the liability of an agent and his previously undisclosed principal is no longer alternative, but is joint and several. Accordingly, a creditor may recover judgments against both the principal and the agent, may attempt to collect its judgment against either party, and, to the extent that the judgment remains unsatisfied, may subsequently pursue collection from the other party. Because Smiley has not prevailed in this court, we deny his request for attorney fees under RCW 4.28.185(5).

We remand the case for the trial court to impose joint and several liability against Smiley and Drill Supply.

PEARSON, C.J., UTTER, BRACHTENBACH, DOLLIVER, DORE, ANDERSEN, and GOODLOE, JJ., and CUNNINGHAM, J. Pro Tem., concur.