# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| JERRY PORTER and KAREN ZIMMER, husband and wife<br><br>                    Appellants,<br><br>    v.<br><br>PEPPER E.KIRKENDOLL and CLARICE N. KIRKENDOLL, husband and wife; KYLE PETERS and ANDREA PETERS, husband and wife; G & J LOGGING, INC., a Washington Corporation; MITCH PAYNE; JOHN BOGER; DANIEL SHEETS, a/k/a BOONE SHEETS, and JENNIFER SHEETS, husband and wife; BOONE'S MECHANICAL CUTTING, INC., a Washington Corporation; and JOHN DOES 1-5,<br><br>                    Respondents. | No. 49819-7-II<br><br><br><br>ORDER AMENDING OPINION |

Appellants, Jerry Porter and Karen Zimmer, filed a motion for correction of this court's published opinion filed on July 17, 2018. The court amends the July 17, 2018, published opinion as follows. On page 8 the following text shall be deleted:

> We agree that the superior court erred in dismissing Porter's timber trespass and indemnity claims, but the superior court did not err in dismissing Porter's waste, contribution, equitable indemnity, and treble damages claims.

The following language shall be inserted in its place:

No. 49819-7-II

We agree that the superior court erred in dismissing Porter's timber trespass and indemnity claims, but the superior court did not err in dismissing Porter's waste and contribution claims.

**ORDERED**.

_____ , A.C.J.
Lee, A.C.J.

We concur:

_____
Worswick, J.

_____
Melnick, J.

2

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| JERRY PORTER and KAREN ZIMMER, husband and wife<br><br>Appellants,<br><br>v.<br><br>PEPPER E.KIRKENDOLL and CLARICE N. KIRKENDOLL, husband and wife; KYLE PETERS and ANDREA PETERS, husband and wife; G & J LOGGING, INC., a Washington Corporation; MITCH PAYNE; JOHN BOGER; DANIEL SHEETS, a/k/a BOONE SHEETS, and JENNIFER SHEETS, husband and wife; BOONE'S MECHANICAL CUTTING, INC., a Washington Corporation; and JOHN DOES 1-5,<br><br>Respondents. | No. 49819-7-II<br><br><br><br>PUBLISHED OPINION |

LEE, A.C.J. — Jerry Porter and Karen Zimmer (collectively "Porter") appeal the superior court's order on summary judgment dismissing Porter's claims for waste, timber trespass, equitable indemnity, and contribution. Porter also appeals the superior court's exclusion of his rebuttal expert's testimony.

We hold that the superior court did not err in dismissing Porter's waste and contribution claims. However, we hold that the superior court erred in dismissing Porter's timber trespass and equitable indemnity claims and that it abused its discretion in excluding Porter's rebuttal expert's

testimony. Accordingly, we affirm in part, reverse in part, and remand to the superior court for further proceedings consistent with this opinion.

FACTS

A. LOGGING THE PROPERTIES

Porter owned a lot to the east of, and adjacent to, Pepper and Clarice Kirkendoll's (collectively "Kirkendoll") property in Lewis County. The land near the property line between the two properties was forested. There was a 60-foot right of way easement located on the western edge of Porter's property, and a road was built on the easement. Porter's property line extended westward past the road about 8 feet at the north end and about 30 feet at the south end. Porter and Kirkendoll used the road to access their respective properties.

In March 2014, Kirkendoll hired Kyle Peters and G & J Logging, Inc. (collectively "G & J") to remove some trees. G & J hired Boone Sheets and Boone's Mechanical Cutting, Inc. (collectively "Boone") to assist in the tree cutting.

Kirkendoll told G & J that he owned the property up to the edge of the road and that all of the trees up to the edge of the road were his. Kirkendoll had seen two monuments that marked the corners of Porter's property west of the road before the trees were cut. Peters was with Kirkendoll when Kirkendoll saw the monuments, and Peters saw at least one of the monuments.

Based on Kirkendoll's representations, G & J instructed Boone on where to cut, and Boone cut and removed the trees up to the edge of the road, including trees on Porter's property. G & J sold the logs and split the proceeds with Kirkendoll.

No. 49819-7-II

After Porter accused Kirkendoll of cutting trees on Porter's property, Kirkendoll had his property surveyed. The survey confirmed that Porter's property line extended into the area where Kirkendoll had instructed G & J to cut trees.

B.     PORTER'S SUIT

Porter filed suit against Kirkendoll, G & J, and Boone. Porter alleged timber trespass under RCW 64.12.030 and waste under RCW 4.24.630. Specifically, Porter alleged that the defendants "intentionally, recklessly or negligently trespassed upon [Porter's property] and cut trees." Clerk's Papers (CP) at 2. Porter also alleged that cutting his trees damaged his landscape, and removing and selling his trees converted his personal property. Porter sought treble damages and attorney fees.

C.     KIRKENDOLL'S ANSWER

Kirkendoll's answer admitted that he "caused timber to be harvested from a right of way easement adjacent to the Plaintiffs [Porter's] holdings" and that he and his "agents only removed timber on property adjacent to [Kirkendoll's] property located on a legally described boundary right-of-way easement." CP at 5-6. Kirkendoll asserted that

> [a]s early as 2006 and 2007, when Plaintiffs were already in possession of the property in question and actually performing work on the boundary road at issue in this complaint and answer, Mr. Kirkendoll openly and in full view [of] Plaintiffs and of the then-travelled portion of the right-of-way, began managing the disputed trees for harvest . . . . By not putting the Kirkendolls on notice of their claim of ownership of the trees in question after seeing that significant timber prep work had been done, Plaintiffs waived damages and are estopped *in pais* from demanding any more than the actual profit obtained by Kirkendoll on such trees.

3

CP at 6. Kirkendoll also stated that Porter could not allege waste because he alleged timber trespass and that facts warranting treble damages were not pled. Kirkendoll did not assert fault of others as an affirmative defense.

D.       G & J'S AND BOONE'S ANSWERS AND CROSS-CLAIMS

G & J's answer admitted that Kirkendoll hired it to remove trees from property that Kirkendoll represented was his, that G & J entered Porter's property and removed trees based on Kirkendoll's representation, and that G & J hired Boone to assist in cutting the trees. G & J alleged that it reasonably believed the trees were on Kirkendoll's property.

G & J asserted cross-claims against Kirkendoll for contribution and indemnity. G & J alleged that Porter sought to hold G & J liable because of Kirkendoll's acts and, if G & J was found liable, such liability was caused by Kirkendoll. Therefore, Kirkendoll should (1) contribute to any damages awarded against G & J, or alternatively, the court should reduce G & J's liability by its proportionate share of fault; and (2) indemnify G & J for any amounts recovered by Porter against G & J.

Boone's answer admitted that G & J hired it to cut trees on Kirkendoll's property, that Boone followed G & J's instructions on where to cut, that Boone reasonably believed the trees were on Kirkendoll's property, and that Boone only cut trees within the boundaries represented by G & J. Boone also asserted that "[a]ny damages allegedly suffered by Plaintiffs were caused, in whole or in part, by the negligence or improper actions of others." CP at 17. Boone later amended its answer to include a cross-claim against G & J and Kirkendoll for "equitable or implied in fact indemnity." Supplementary . Clerk's Papers (Supp. CP) at 587.

4

E.    DAMAGES EXPERTS

Porter hired Patrick See as an expert witness on damages.  See used "the trunk formula method[1] to determine the value the destroyed landscape made to the property value of the entire Porter holding."  Supp. CP at 378.  See stated that Porter would not enjoy the natural landscape that lined his driveway for at least forty years after the trees were replaced and that Porter's land was damaged.  The damage could not be measured by stumpage value[2] alone because that value ignored the landscape value lost.

Kirkendoll hired Michael Jackson as an expert witness.  Jackson stated that the trunk formula method was the appropriate appraisal method for trees in residential landscape, recreational, or shade tree situations when the species and size can be determined.  But Jackson disagreed with See's damages calculation.

G & J hired Walter Knapp as an expert witness.  Knapp stated that the trees should be valued solely for their stumpage value.

G & J also hired Victor Musselman to conduct an evaluation.  Musselman stated that there was no effect on the marketability of Porter's property due to the cut trees.

---

[1] See did not describe the "trunk formula method."  Generally, the trunk formula method is "used to appraise the monetary value of trees considered too large to be replaced with nursery stock. Value is based on the cost of the largest commonly available transplantable tree and its cost of installation, plus the increase in value due to the larger size of the tree being appraised. . . . [the value is] then adjusted for species, condition, and location ratings."  Barri Kaplan Bonapart, *Understanding Tree Law: A Handbook for Practitioners*, § 11 (Thomson Reuters 2014).

[2] See did not define "stumpage value."  Generally, stumpage value is the market value of a tree before it is cut; the amount that a purchaser would pay for a standing tree to be cut and removed. David H. Bowser, *"Hey, That's My Tree!"—An Analysis of the Good-Faith Contract Logger Exemption from the Double and Treble Damage Provisions of Oregon's Timber Trespass Action*, 36 WILLAMETTE L. REV. 401, 405 (2000).

F.    PRE-TRIAL PROCEEDINGS

Kirkendoll sent Jackson's report to Porter before the discovery cutoff date.  Kirkendoll later sent Jackson's notes and file to Porter and asked, "If [the notes and file] in any way impacts your experts' ability to testify fully at their depositions tomorrow, please let me know right away so we can attempt to work something out."  Supp. CP at 376.  Porter did not respond to the email.

Nine days later, Porter sent a letter to the defendants naming Galen Wright as an additional rebuttal expert.[3]  Specifically, Porter said Wright would rebut the manner in which Jackson and Knapp applied the trunk formula and their opinions as to the distinction between landscape damage and damages associated with the appropriation of Porter's logs.  This letter was sent days after disclosure of rebuttal witnesses was due.

Kirkendoll filed a motion in limine to exclude Wright from testifying.  Kirkendoll argued that Porter untimely disclosed Wright as an expert, that Wright's testimony was cumulative to that of Porter's other expert, that Kirkendoll would be prejudiced if Wright was allowed to testify, and that Porter provided no compelling reason for the last minute "switch" of experts.

The superior court granted Kirkendoll's motion and excluded Wright's testimony.  The superior court reasoned that Porter untimely disclosed Wright as an expert, that Porter did not respond to Kirkendoll's letter asking whether Jackson's notes and file would impact See's deposition testimony, and that Porter would not be prejudiced because Porter had another expert witness who could testify to the same subject area as Wright.

---

[3] Porter had already identified See as a rebuttal witness.

G.       THE SETTLEMENT

A month before the superior court's ruling excluding Wright's rebuttal testimony, Porter and G & J entered into a settlement agreement. G & J agreed to pay Porter $75,000, assign all of its cross-claims against Kirkendoll to Porter, allow Porter to use G & J's experts, and assist Porter in prosecuting the assigned claims. In exchange, Porter agreed to indemnify G & J against all cross-claims brought against G & J by other parties and to dismiss his claims against G & J.

A couple of days later, Porter, G & J, and Boone entered into a supplemental settlement agreement. In the supplemental settlement agreement, G & J agreed to pay Porter an additional $40,000. Boone agreed to pay Porter $10,000, assign all of its claims against Kirkendoll to Porter, assist Porter in prosecuting the assigned claims, and dismiss its cross-claims against G & J. In exchange, Porter agreed to dismiss his claims against Boone.

H.       SUMMARY JUDGMENT

Porter then filed a motion for partial summary judgment against Kirkendoll. Porter argued that he was entitled to summary judgment on his assigned indemnity claims because Kirkendoll caused G & J and Boone (collectively "the Loggers") to be involved in the case, the case should proceed under the waste statute because Kirkendoll caused injury to land and trees, and Porter was entitled to treble damages because Kirkendoll acted wrongfully.

Kirkendoll responded to Porter's motion and filed his own motion for summary judgment. Kirkendoll argued that he was entitled to summary judgment dismissal of all claims against him because (1) Porter's settlement with the Loggers released Kirkendoll's liability under *Glover*;[4] (2)

---

[4] *Glover v. Tacoma General Hosp.*, 98 Wn.2d 708, 658 P.2d 1230 (1983), *abrogated by Crown Controls, Inc. v. Smiley*, 110 Wn.2d 695, 756 P.2d 717 (1988).

the Loggers did not have indemnity rights to assign to Porter because such rights were abolished under the Tort Reform Act (TRA), chapter 4.22 RCW; and (3) the Loggers did not have contribution rights to assign to Porter because they did not provide notice and there was no reasonableness hearing for the settlement that was reached.

The superior court denied Porter's partial summary judgment motion, granted Kirkendoll's summary judgment motion, and dismissed all of Porter's claims against Kirkendoll. Porter filed a motion for reconsideration of the superior court's summary judgment dismissal, which the superior court denied.

Porter appeals the superior court's orders granting Kirkendoll's motion for summary judgment and denying Porter's motion for partial summary judgment.

ANALYSIS

A.    SUMMARY JUDGMENT

Porter argues that the superior court erred in (1) granting Kirkendoll's summary judgment and dismissing all his claims against Kirkendoll; and (2) denying Porter's motion for partial summary judgment on (a) his assigned equitable indemnity claim, (b) the application of the waste statute, and (c) liability for treble damages for timber trespass. We agree that the superior court erred in dismissing Porter's timber trespass and indemnity claims, but the superior court did not err in dismissing Porter's waste, contribution, equitable indemnity, and treble damages claims.

1.    Legal Principles

We review a trial court's summary judgment decision de novo. *Keck v. Collins,* 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). We consider the evidence and all reasonable inferences from the evidence in the light most favorable to the nonmoving party. *Id.*

8

Summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Id.* "A material fact is one that affects the outcome of the litigation." *Owen v. Burlington N. & Santa Fe R.R. Co.*, 153 Wn.2d 780, 789, 108 P.3d 1220 (2005). "An issue of material fact is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Keck*, 184 Wn.2d at 370.

We also review the meaning of statutes de novo. *Gunn v. Riely*, 185 Wn. App. 517, 524, 344 P.3d 1225, *review denied*, 183 Wn.2d 1004 (2015). "Our fundamental objective is to ascertain and carry out the legislature's intent." *Id.* If the statute's meaning is plain on its face, we must give effect to the plain meaning of the statute as an expression of legislative intent. *Id.* We look to interpretive aids only if the statute is ambiguous. *Id.*

2.      Kirkendoll's Motion for Summary Judgment

Porter argues that the superior court erred in granting Kirkendoll's motion for summary judgment and dismissing all his claims against Kirkendoll. We agree that the superior court erred in dismissing Porter's claims for timber trespass and indemnity, but the superior court did not err in dismissing Porter's claims for waste and contribution.

a.      Timber trespass claims

i.      Application of the TRA to a timber trespass claim

As an initial matter, Porter argues that the TRA does not apply to intentional torts such as timber trespass. We agree.

Under the TRA, "In an action based on fault seeking to recover damages for injury or death to person or harm to property, any contributory fault chargeable to the claimant diminishes proportionately the amount awarded as compensatory damages for an injury attributable to the

9

claimant's contributory fault, but does not bar recovery." RCW 4.22.005. "Fault" is defined as "acts or omissions, including misuse of a product, that are in any measure negligent or reckless toward the person or property of the actor or others, or that subject a person to strict tort liability or liability on a product liability claim." RCW 4.22.015.

Under RCW 64.12.030, a person is liable for timber trespass when the person "cut[s] down, girdle[s], or otherwise injure[s], or carr[ies] off any tree, . . . timber, or shrub on the land of another person . . . without lawful authority." One who authorizes or directs a trespass is jointly and severally liable with the actual trespassers. *Bloedel Timberlands Dev., Inc. v. Timber Indus., Inc.,* 28 Wn. App. 669, 676, 626 P.2d 30, *review denied*, 95 Wn.2d 1027 (1981); *see Hill v. Cox*, 110 Wn. App. 394, 404, 41 P.3d 495, *review denied*, 147 Wn.2d 1024 (2002).

Our Supreme Court has held that timber trespass sounds in tort and trespass is an intentional tort. *Birchler v. Castello Land Co.*, 133 Wn.2d 106, 115, 942 P.2d 968 (1997) (timber trespass is an intentional tort); *Jongeward v. BNSF R. Co.*, 174 Wn.2d 586, 597 n.9, 278 P.3d 157 (2012) (an involuntary or accidental trespass is still trespass). The TRA does not apply to intentional torts. *See Welch v. Southland Corp.*, 134 Wn.2d 629, 634, 952 P.2d 162 (1998). Thus, the TRA does not apply to timber trespass.[5]

---

[5] The superior court relied on *Glover v. Tacoma General Hospital* as the basis for dismissing Porter's timber trespass claim. The *Glover* court relied on the TRA, specifically RCW 4.22.040(1), "to discharge a principal when the agent and the injured party have entered into a settlement which the trial judge has approved as reasonable." 98 Wn.2d at 722. But as discussed above, the TRA does not apply to intentional tort claims, and timber trespass is an intentional tort. Therefore, dismissal of Porter's timber trespass claims based on *Glover* was not proper.

ii.     Porter's timber trespass claim based on agency

Porter also argues that his settlement with the Loggers did not release Kirkendoll from liability for timber trespass because the Loggers were not Kirkendoll's agents. We agree.

A principal is released by operation of law as a result of a release of the agent if that agent is solvent. *Vanderpool v. Grange Ins. Ass'n*, 110 Wn.2d 483, 487, 756 P.2d 111 (1988). The crucial factor in determining the existence of an agency relationship is "the right to control the manner of performance." *O'Brien v. Hafer*, 122 Wn. App. 279, 283, 93 P.3d 930 (2004), *review denied*, 153 Wn.2d 1022 (2005).

For timber trespass, the manner of performance refers to the actual cutting. *Bloedel,* 28 Wn. App. at 674. Kirkendoll argues that an agency relationship existed because he controlled the location of the cutting. However, the manner of performance is how the cutting was to be done and no evidence was presented to show that aside from selecting the location, Kirkendoll had any control over the cutting of the trees. *Id*. Thus, an agency relationship between Kirkendoll and the Loggers did not exist. Therefore, Porter's release of the Loggers from liability did not, in turn, release Kirkendoll from liability for timber trespass.

iii.     Porter's timber trespass claim based on Kirkendoll's conduct

Porter argues that because Kirkendoll could be held liable for his own misconduct and not just the conduct of the Loggers, the superior court erred when it granted Kirkendoll's motion for summary judgment dismissal of his timber trespass claim. We agree.

Under RCW 64.12.030, a person is liable for timber trespass when the person "cut[s] down, girdle[s], or otherwise injure[s], or carr[ies] off any tree, . . . timber, or shrub on the land of another person . . . without lawful authority." One who authorizes or directs a trespass is jointly and

11

severally liable with the actual trespassers. *Bloedel*, 28 Wn. App. at 676; *see Hill*, 110 Wn. App. at 404. Joint and several liability enables "a plaintiff to sue one tortfeasor and recover all of his or her damages from one of multiple tortfeasors." *Washburn v. Beatt Equip. Co.*, 120 Wn.2d 246, 294, 840 P.2d 860 (1992).

Here, Porter alleged that Kirkendoll was liable under the timber trespass statute based on Kirkendoll's conduct of telling the Loggers where to cut. Because Kirkendoll directed the trespass in this case by instructing G & J (who then instructed Boone) on where to cut, Porter also had a timber trespass claim against Kirkendoll independent of any claim against Kirkendoll for timber trespass based on an agency theory. Therefore, the superior court erred when it granted summary judgment dismissal of Porter's timber trespass claim against Kirkendoll based on Kirkendoll's conduct.[6]

b. Assigned common law indemnity claims

Porter argues that the superior court erred when it dismissed his assigned common law indemnity claims on summary judgment. We agree.

Washington courts have identified three general types of indemnity. *Fortune View Condo. Ass'n v. Fortune Star Dev. Co.*, 151 Wn.2d 534, 543, 90 P.3d 1062 (2004). These include

---

[6] Kirkendoll argues that there could be no theory of liability against him beyond respondeat superior (otherwise referred to as "vicarious liablity"). Kirkendoll cites *Hill*, 110 Wn. App. at 394, and *Ventoza v. Anderson*, 14 Wn. App. 882, 545 P.2d 1219, *review denied*, 87 Wn.2d 1007 (1976), to support his position. However, those cases both state that a party can be liable for directing independent contractors to cut trees on the land of another. *See Hill*, 110 Wn. App. at 404; *Ventoza*, 14 Wn. App. at 896.

contractual indemnity,[7] implied contractual indemnity,[8] and equitable indemnity. *Id.* at 543-44. Equitable indemnity is also referred to as "common law indemnity." *Id.* at 544.

Under common law indemnity, a person without personal fault, who has become subject to tort liability for the wrongful conduct of another, "'is entitled to indemnity from the other for expenditures properly made in the discharge of such liability.'" *Id* (internal quotation marks omitted) (quoting *Hanscome v. Perry*, 75 Md. App. 605, 617, 542 A.2d 421 (1987)). The "ABC Rule" embodies the theory of equitable/common law indemnity. *See LK Operating, LLC v. Collection Grp., LLC*, 181 Wn.2d 117, 123, 330 P.3d 190 (2014). The ABC rule requires: (1) a wrongful act or omission by A toward B, (2) that such act or omission exposes or involves B in litigation with C, and (3) that C was not connected with the wrongful act or omission of A toward B. *Id.*

Here, because the TRA does not apply, the Loggers' common law indemnity rights were not abolished by the TRA.[9] Therefore, Porter received the Loggers' common law indemnity rights through an assignment from the Loggers in his settlement with the Loggers.

---

[7] Contractual indemnity is expressly provided in a contract between parties. *Id.* at 543 n.1. Porter does not argue that his assigned indemnity claims are based on any contracts between Kirkendoll and G & J or Boone.

[8] Implied contractual indemnity is based on a "'contract between two parties that *necessarily implies the right*.'" *Id.* at 544 (quoting *Kaleel Builders, Inc. v. Ashby*, 161 N.C. App. 34, 38, 587 S.E.2d 470 (2003), *review denied*, 358 N.C. 235 (2004)). Porter does not argue that his assigned indemnity claims are based on any contract between Kirkendoll and G & J or Boone.

[9] Under the TRA, "The common law right of indemnity between active and passive tort feasors is abolished." RCW 4.22.040(3). The TRA replaced the common law right of indemnity between active and passive tortfeasors with the right to contribution. *Johnson v. Cont'l W., Inc.*, 99 Wn.2d 555, 558, 663 P.2d 482 (1983).

For common law indemnity, a person without personal fault, who has become subject to tort liability for the wrongful conduct of another, "'is entitled to indemnity from the other for expenditures properly made in the discharge of such liability.'" *Fortune View*, 151 Wn.2d at 544 (internal quotation marks omitted)(quoting *Hanscome*, 75 Md. App. at 617). A genuine issue remained as to whether the Loggers were without personal fault here and had become subject to tort liability for the wrongful conduct of Kirkendoll, entitling the Loggers to amounts paid to discharge that liability. *Id*. Therefore, the superior court erred when it granted Kirkendoll's motion for summary judgment and dismissed Porter's assigned indemnity claims.

c.      Waste claim

Porter argues that the superior court erred when it dismissed his waste claim against Kirkendoll on summary judgment. We disagree.

Under RCW 4.24.630(1), a person is liable for waste when the person "goes onto the land of another and . . . removes timber, crops, minerals, or other similar valuable property from the land, or wrongfully causes waste or injury to the land." A person who directs or assists in such acts may be held jointly and severally liable. *Standing Rock Homeowners Ass'n v. Misich*, 106 Wn. App. 231, 246, 23 P.3d 520, *review denied*, 145 Wn.2d 1008 (2001).

The waste statute "does not apply *in any case* where liability for damages is provided under RCW 64.12.030," the timber trespass statute. RCW 4.24.630(2) (emphasis added). The waste statute "explicitly excludes its application where liability for damages is provided under RCW 64.12.030, the timber trespass statute." *Gunn*, 185 Wn. App. at 525.

A person is liable under the timber trespass statute when the person "cut[s] down, girdle[s], or otherwise injure[s], or carr[ies] off any tree, . . . timber, or shrub on the land of another person

14

. . . without lawful authority." RCW 64.12.030. Here, trees were cut on Porter's property. Kirkendoll hired G & J, who then hired Boone, to remove the trees. Kirkendoll told G & J where to cut the trees, and G & J relayed that information to Boone. Boone cut and removed the trees as directed. Because liability for damages would be provided under the timber trespass statute here, the waste statute did not apply. RCW 4.24.630(2).

Porter also argues that the waste statute could apply in cases involving both damage to land and trees. In support of this argument, Porter cites to a footnote in *Gunn* that discussed the legislature's rationale for enacting the waste statute as a method of dealing with vandalizing of trees, running over of agriculture, and ripping up of ground. 185 Wn. App. at 525 n.6. The *Gunn* court noted that

> it appears that there could be a situation, under circumstances of waste or vandalism, where a court may find that RCW 4.24.630 appropriately applies to a dispute over comprehensive property damage that includes damage to property and removal of timber, rather than a dispute where the sole issue is timber trespass.

*Id*.

Here, however, there are no circumstances of waste, vandalism, or comprehensive property damage. The sole allegation was the cutting and removal of Porter's trees and damage to Porter's bushes. Although Porter also alleged damage to his landscape, such damage resulted from the same acts that constitute timber trespass. Merely characterizing the trees as "canopy" is not sufficient to render damage to such trees "comprehensive property damage" or damage to real property as contemplated in *Gunn*.

Also, if a statute's meaning is plain on its face, we must give effect to the plain meaning of the statute as an expression of legislative intent. *Id*. at 524. Because the meaning of the waste

statute is plain on its face—the waste statute does not apply *in any case* where damages are provided for under the timber trespass statute—we must give effect to the plain meaning of the statute. Therefore, we hold that the superior court's summary judgment dismissal of Porter's waste claim was proper.

### d. Assigned contribution claims

Porter argues that the superior court erred when it granted Kirkendoll's motion for summary judgment dismissal of Porter's assigned contribution claims under the TRA. We disagree.

Under the TRA, "A right of contribution exists between or among two or more persons who are jointly and severally liable upon the same indivisible claim for the same injury, death or harm, whether or not judgment has been recovered against all or any of them." RCW 4.22.040(1). But here, the TRA does not apply. *See Supra* Section A.2.a.i. As a result, the right to contribution under the TRA did not exist. Therefore, the superior court did not err when it granted summary judgment dismissal of Porter's assigned contribution claim.

### 3. Porter's Motion for Partial Summary Judgment

Porter argues that the superior court erred when it denied his motion for partial summary judgment on his claims for equitable/common law indemnity, waste, and treble damages. We disagree.

### a. Equitable/common law indemnity claim

As discussed above, the Loggers' common law indemnity rights were not abolished by the TRA because the TRA does not apply. Consequently, Porter obtained through assignment any such rights that the Loggers' possessed. *See Supra* Section A.2.b.

16

However, the record is not clear as to whether the Loggers are without fault and are subject to liability only for the wrongful conduct of Kirkendoll. The record shows that Peters was with Kirkendoll when Kirkendoll saw the monuments, and Peters saw at least one of the monuments marking the corners of Porter's property west of the road. Therefore, a genuine issue of material fact exists, and the superior court did not err when it denied partial summary judgment on Porter's assigned equitable/common law indemnity claims.

### b. Waste claim

As discussed above, the waste statute did not apply. *See Supra* Section A.2.c. Therefore, the superior court did not err when it denied Porter's motion for partial summary judgment on his waste claim.

### c. Treble damages claim

Because we hold that the superior court erred in dismissing Porter's timber trespass claim on summary judgment, we necessarily hold that the superior court erred in dismissing Porter's claim for treble damages for the timber trespass on summary judgment, and remand this issue to the superior court for further proceedings.

## B. EXCLUSION OF WRIGHT'S TESTIMONY

Porter argues that the superior court erred when it excluded Wright's rebuttal testimony.[10] We agree.

---

[10] Porter did not designate the superior court's decision excluding Wright's testimony in his notice of appeal. However, we review this decision in the interest of justice because Porter sets forth the decision in his assignments of error, presents argument on the issue, and references legal authority; and Kirkendoll addresses the issue. *In re Truancy of Perkins*, 93 Wn. App. 590, 594, 969 P.2d 1101 (1999), *abrogated on other grounds by Bellevue Sch. Dist. v. E.S.*, 148 Wn. App. 205, 199 P.3d 1010 (2009).

A trial court exercises broad discretion in imposing discovery sanctions and its determination will not be disturbed absent a clear abuse of discretion. *Mayer v. Sto Indus., Inc.*, 156 Wn.2d 677, 684, 132 P.3d 115 (2006). The trial court must consider the factors set forth in *Burnet*[11] before excluding witnesses for late disclosure. *Jones v. City of Seattle*, 179 Wn.2d 322, 344, 314 P.3d 380 (2013). The record must show consideration of a lesser sanction, the willfulness of the violation, and substantial prejudice arising from the violation. *Mayer*, 156 Wn.2d at 688. Failure to consider these factors constitutes an abuse of discretion. *Keck*, 184 Wn.2d at 362.

Here, the superior court excluded Wright's rebuttal testimony because of Porter's late disclosure of Wright after the date set for disclosure of rebuttal witnesses. Thus, the superior court's exclusion was a discovery sanction. But the superior court did not consider the *Burnet* factors before excluding Wright's rebuttal testimony as a sanction for late disclosure. The superior court only considered the fact that Porter did not respond to Kirkendoll's letter and that Porter would not be prejudiced by Wright's exclusion.

While the superior court's consideration of Porter's lack of response may constitute consideration of Porter's willfulness, the superior court still did not consider the existence of lesser sanctions or whether Kirkendoll was *substantially* prejudiced by the late disclosure. Therefore, the superior court abused its discretion when it excluded Wright based on late disclosure without considering the *Burnet* factors.

---

[11] *Burnet v. Spokane Ambulance*, 131 Wn.2d 484, 933 P.2d 1036 (1997).

ATTORNEY FEES

Porter requests attorney fees on appeal under the equitable indemnity principles and the waste statute. As discussed above, the waste statute is inapplicable here. And we exercise our discretion here and decline to award attorney fees under equitable indemnity principles.

CONCLUSION

We hold that the superior court erred in granting summary judgment dismissal of Porter's timber trespass claim and indemnity claims, and abused its discretion when it excluded Wright's testimony. We also hold that the superior court did not err in granting summary judgment dismissal of Porter's waste claim and contribution claims.

We affirm in part, reverse in part, and remand to the superior court for further proceedings consistent with this opinion.

_____, A.C.J.
Lee, A.C.J.

We concur:

_____
Worswick, J.

_____
Melnick, J.

19